## McEvoy v. Quaker City Cab Co., Appellant.

*Negligence—Judgment—Opening—Fraud — Perjury — Surprise —After-discovered evidence—Equity—Maxims—Interest rei publicæ—Nemo debet bis vexari, etc.*

1. The general rule is that an act for which a court of equity will set aside or annul a judgment between the same parties, rendered by a court of competent jurisdiction, has relation to fraud

extrinsic or collateral to the matter tried by the first court, not to fraud in the matter on which the judgment was rendered.

2. By the expression "extrinsic or collateral fraud" is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy.

3. The reason for the rule is that there must be an end of litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there.

4. The court will not set aside a judgment because it was founded on perjured evidence, or for any other matter which was actually presented and considered in the judgment assailed.

5. Where a judgment in a personal injuries case in favor of plaintiff, has been affirmed by the appellate court, and thereafter defendant obtains a rule on plaintiff to show cause why the judgment should not be opened, the verdict set aside, and a new trial granted, such rule is properly discharged, where the only ground alleged in support of it was perjury on the part of plaintiff in his testimony, in swearing falsely and knowingly to several elements in his case, with the result that the court and jury were misled thereby and an excessive verdict was rendered by the jury.

6. When the issues of fact are so squarely made that each party knows what the other will attempt to prove, and neither is under any necessity of depending on the other to prove the facts to be as he himself claims, the courts have refused to grant relief on the ground of false or perjured testimony by the successful party or his witnesses. The fact that the introduction of the false testimony was not anticipated by the party against whom the judgment was rendered, and he was therefore taken by surprise, will not take the case out of the general rule; for perjury on the part of a plaintiff is not considered as constituting a case falling within the rule permitting a court of equity to relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect.

7. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court on false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these and similar cases which show that there has never been a real contest in the trial or hearing of the case are reasons for which a new suit may be sustained to set aside and

annul the former judgment or decree and open the case for a new and fair hearing.

8. The Supreme Court will not, on the merits of the case, review the discretion of the lower court in refusing a new trial on account of alleged perjury of plaintiff, where it appears that the counter affidavits filed by plaintiff to defendant's petition traversed every material averment set out in the petition, with explanations, where the traverse was not specific, which would, in the opinion of the court, make a conviction of perjury improbable and unsafe, and it also appears that the trial was a fair one in which defendant was fully advised by the pleadings of the nature and character of the evidence plaintiff would be required to produce to establish his case.

Argued May 4, 1920. Appeal, No. 8, Jan. T., 1921, by defendant, from order of C. P. No. 2, Phila. Co., Dec. T., 1917, No. 3252, discharging rule to open judgment and grant a new trial in case of Jerome F. McEvoy v. Quaker City Cab Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Rule to open judgment, set aside verdict and grant new trial. Before WESSEL, J.

The opinion of the Supreme Court states the facts.

The court discharged the rule. Defendant appealed.

*Error assigned* was, inter alia, order discharging rule, quoting record.

*Robert P. Shick,* with him *Charles F. DaCosta,* for appellant, cited: Friedland v. Altoona & L. Val. E. Ry., 65 Pa. Superior Ct. 433; Mix v. N. American Co., 209 Pa. 636; Reeser v. Rahn, 27 Pa. Dist. R. 821; Lingenfelter v. Riddlesburg C. & I. Co., 84 Pa. 328; Wickel v. Mertz, 49 Pa. Superior Ct. 472.

*Bertram D. Rearick,* for appellee, was not heard.

OPINION BY MR. JUSTICE STEWART, May 26, 1920:

In an action brought by Jerome F. McEvoy in the Court of Common Pleas, No. 2, of Philadelphia County,

for the recovery of damages for personal injuries sustained through defendant's alleged negligence, a verdict was rendered against the defendant in the sum of $12,-500. A motion for a new trial and judgment non obstante followed, under which depositions were taken by both parties, which were filed of record. On November 4, 1918, a new trial was refused; on the 8th of November, 1918, judgment on the verdict was entered. An appeal from the judgment was taken to this court, and on April 21, 1919, in an opinion by Mr. Justice WALLING, the judgment of the lower court was affirmed and the record remanded. The case is reported in 264 Pa. 418. Execution having been issued on the judgment soon after the return of the record, the defendant thereupon obtained from the common pleas a rule upon the plaintiff to show cause why the judgment should not be opened, the verdict set aside, and the previous rule for a new trial reinstated, with leave to file additional reasons, etc., on the ground of fraud in procurement of the judgment. On February 11, 1920, depositions of witnesses were taken by both parties, produced and submitted, and upon due consideration the court discharged the rule that had been granted. This appeal is from the order discharging the rule.

The whole effort of defendant in support of the motion for a new trial was to satisfy the court by the affidavits produced that they supported the averments in the petition, at least to such degree of certainty as in justice and fairness called for the opening of the judgment and a resubmission of the case. The principal attack, and indeed the only one that needs to be considered, was directed at the testimony of the plaintiff, a witness upon the trial of the case. The charge was made that the witness swore falsely and knowingly to several elements in his case, with the result that the court and jury were misled thereby and an excessive verdict was returned by the latter. The legal conclusion sought to be derived from such evidence—assuming the new trial to be grant-

ed and that appellant's contention as to the false testimony on the former trial were to prevail—is that a different verdict would result and the judgment obtained on the former verdict would be thereby nullified. The proposition assumes too much. First of all, it assumes the regularity and legality of this form of attack upon a judgment regularly obtained upon a verdict of a jury, which judgment and verdict had passed twice under the scrutiny and adjudication of the court in which the judgment had been obtained, there meeting with the approval of the same court, and once under like scrutiny and examination of this court on appeal; and, secondly, it assumes the admissibility and competency of the evidence by which it is proposed to assail the judgment. We are not to be understood as questioning the power of the court that rendered such judgment to open it and grant a new trial upon proper cause shown, even where the sole allegation is that it was procured by false swearing of a witness. But such a proceeding is rarely attempted, and still more rarely succeeds, for several reasons which are thus enumerated and defined in Ruling Case Law, volume 15, p. 768: "The obtaining of a judgment by wilful and corrupt perjury undoubtedly amounts to fraud, and the intentional production of false testimony will usually justify the annulment of a decree or judgment which is the product of such testimony; especially when it is accompanied by any fraud extrinsic and collateral to the matter involved in the original cause. But wherever equity will interfere it will do so only where the perjury is established beyond all reasonable controversy by evidence clear, convincing, and satisfactory, and it seems to be a sound rule that relief cannot be had against a judgment in any event on the ground of perjury, unless it can be shown that, but for the perjury, the result would have been different......These various requirements may be summarized by saying that if a judgment is based upon perjured evidence of a successful party given at the trial,

while the defeated party has a good defense which he was prevented from presenting by reason of such perjury, and without being guilty of negligence has exhausted all his ordinary legal remedies for vacating such judgment, equity, in a proper proceeding, may grant relief in regard to the judgment......Courts of equity may refuse to grant relief on account of perjured testimony, if the question whether the testimony was perjured could have been tried in the former case by the use of due diligence. Where the nature of a suit was such as fully to apprise the aggrieved party as to what the evidence would be, and the facts were within the knowledge of both parties, a situation may be presented in which the defeated party was guilty of negligence in not meeting and disproving the perjured testimony of his adversary at the trial of the suit. If this is the case, equity may properly decline to interfere with the resulting judgment.......There is an obligation on litigants to prepare for trial and to be ready to meet and expose perjury then and there. It has been well said that every litigant enters upon the trial of a case, knowing not merely the uncertainty of human testimony when honestly given, but that, if he has an unscrupulous antagonist, he may have to encounter frauds of this character and that he must take the chance of establishing his case by opposing testimony, and subjecting his opponent's witnesses to the scrutiny of a searching cross-examination. Hence, the case is none the less tried on its merits, and the judgment rendered is none the less conclusive by reason of the false testimony produced. When the issues of fact are so squarely made that each party knows what the other will attempt to prove, and neither is under any necessity of depending on the other to prove the facts to be as he himself claims them [to be], the courts have refused to grant relief on the ground of false or perjured testimony by the successful party or his witnesses. The fact that the introduction of the false testimony was not anticipated by the party against whom

the judgment was rendered, and he was therefore taken by surprise, will not take the case out of the general rule; for perjury on the part of a plaintiff is not considered as constituting a case falling within the rule permitting a court of equity to relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect."

A leading case on this branch of the law is U. S. v. Throckmorton, 98 U. S. 61. From the opinion in that case, delivered by Mr. Justice MILLER, we make this extract: "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments. There is also no question that many rights originally founded on fraud become—by lapse of time, by the difficulty of proving the fraud, and by the protection which the law throws around rights once established by a former judicial proceeding in tribunals established by law according to the methods of the law— no longer open to inquiry in the usual and ordinary methods. Of this class are judgments and decrees of a court deciding between parties before the court and subject to its jurisdiction, in a trial which has presented the claims of the parties and where they have received the consideration of the court. There are no maxims of the law more firmly established or more valuable in the administration of justice than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, interest rei publicæ, ut sit finis litium, nemo debet bis vexari pro una et eadem causa. But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision in the issue of the case. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponents, as by keeping him away from court on false promise of compromise; or where the defendant never had knowl-

edge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these and similar cases which show that there has never been a real contest in the trial or hearing of the case are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and fair hearing. See Wells, Res Adjudicata, sec. 499; Pearce v. Olney, 20 Conn. 544; Wierich v. DeZoya, 7 Ill. 385; Kent v. Ricards, 3 Md. Ch. 392; Smith v. Lowry, 1 Johns. Ch. (N. Y.) 320; DeLouis v. Meek et al., 2 Iowa 55. In all these cases, and many others which have been examined, relief has been granted on the ground that, by some fraud practiced directly upon the parties seeking relief against the judgment or decree, that party has been prevented from presenting all his case to the court.

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument or perjured evidence or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work, Res Adjudicata, says, sec. 499, 'fraud vitiates everything, and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling fraud......Likewise, there are few exceptions to the rule that equity will not go behind a judgment to interpose in the cause itself but only where there was some hindrance, besides the negligence of the defendant, in presenting the defense in the legal action.'"

Further on in the opinion the learned court says, "But perhaps the best discussion on the whole subject is to be

found in Greene v. Greene, 2 Gray (Mass.) 361, where the opinion was delivered by Chief Justice SHAW, wherein he says, 'the maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud because the judgment is the highest evidence and can not be contradicted.' It is otherwise, he says, with a stranger to the judgment. This is said in a case where the bill was brought for the purpose of impeaching the decree direct, and not where it was offered in evidence collaterally.

We think these decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will on account of fraud set aside and annul a decree or judgment between the same parties rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness and validity are in issue and which are afterwards ascertained to be forged or fraudulent, would be greater by reason of the nature of endless strife than any compensation in doing justice in individual cases."

The next case to which we refer is Electric Plaster Co. v. Blue Rapids City Township, 81 Kansas, 730, reported and annotated in 25 L. R. A. (New Series), p. 1237. In the opinion in this case, U. S. v. Throckmorton, supra, is referred to as the leading case in this country on the subject we are now concerned with. We quote from the opinion, page 1237: "The general rule is that an act for which a court of equity will set aside or annul a judgment between the same parties, rendered by a court of competent jurisdiction, has relation to fraud

extrinsic or collateral to the matter tried by the first court, not to fraud in the matter on which the judgment was rendered: Camp v. Ward, 69 Vt. 286. The cases on this question are collated in a note to Graves v. Graves, supra, and Bleakley v. Barclay, 75 Kansas 462, in 10 L. R. A. (N. S.) 230. By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: Pico v. Cohn, 91 Cal. 129. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial."

On the general subject of new trials this is stated in Cyc., volume 29, p. 918: "Ordinarily a new trial will not be granted for newly discovered evidence to impeach a witness"; and, again, this occurs on page 904, same volume, "New trials for newly discovered evidence, not material to the main issues, but only on the measure of unliquidated damages, have been refused frequently."

Our next reference is to one of our own cases which shows conclusively, we think, that this court has adopt-

ed the same rule which is asserted in our previous citations, to the effect that when a new trial is asked for on the ground of perjury or other fraud, it will be granted only in case of fraud alleged as extrinsic in its character as distinguished from intrinsic evidence. Our reference is to the case of Gazzam v. Reading, 202 Pa. 231, a case peculiarly apposite here, inasmuch as the judgment there assailed was on a verdict which was followed by a motion for a new trial, which was refused, and judgment entered. On appeal to this court the judgment was affirmed upon a reargument of the case, and the record remitted to the court below. This was followed by a motion to set aside the judgment on the ground that the verdict had been procured by collusion and false swearing. Upon a full consideration the new trial was refused and appeal was taken to this court. It is not necessary to recite further the facts of the case. The opinion was delivered by Mr. Justice DEAN and contains a clear recognition of the principle asserted by Mr. Justice MILLER in U. S. v. Throckmorton, supra, distinguishing between extrinsic and intrinsic evidence in motions for a new trial, and holding that when perjury or other fraud in the procurement of the judgment is the ground alleged in the bill or petition, only such evidence is admissible as tends to show that the fraud alleged operated to prevent the opposing party from making his defense. We think this will clearly appear in the following extracts from the opinion. On page 237 Mr. Justice DEAN says: "Treating this as, in substance, an equitable proceeding to restrain execution of a judgment at law, counsel on both sides concede that there are certain general principles that we should keep in view, and which were doubtless in the mind of the judge, recognized by nearly all courts, but especially by those of our own State. Equity will rarely open or set aside a judgment at law. It will never do so when the party could have availed himself of the objection at the trial, or was not prevented from so doing by fraud of his

antagonist. A court of equity will never move to merely save a party from the consequences of his own laches or negligence. The equity of the complainant must be free from doubt. The result, a judgment reached by litigation, should, unless clearly unjust, be an end of strife. Every suitor in a dispute involving life, liberty, property, or reputation, is entitled by right to one trial, but not to two; if he gets more than one, it is of grace, not because of a fundamental right......We concede that where, by fraud of the plaintiff, the defendant in a judgment has never had his day in court, or where by his fraud the court has been imposed upon, equity will relieve, either on application to open the judgment or by bill to restrain execution thereon." The learned judge then proceeds to discuss the case of Cochran v. Eldridge, 49 Pa. 365, a case relied upon by appellant's counsel in the argument, and sets out its distinguishing and controlling features in contradistinction: "The judgment became absolute on an award of arbitrators. Townsend pretended to represent Eldridge at the arbitration, but Eldridge was ignorant of this. On a rule at the instance of Eldridge, the judgment was opened, on issue framed to determine whether the judgment was obtained by fraud and collusion between Cochran and Townsend, and the jury found that it was. It will be noticed that Eldridge never had his day in court, was never heard to show that he owed Townsend nothing, and therefore could owe the plaintiff, Cochran, his transferee, nothing; and the verdict settled the fact that these two were in collusion to obtain the judgment against Eldridge. The fraud perpetrated was not only upon the defendant, Eldridge, but upon the court, for when judgment was entered upon the award; the implied representation to the court, from its own records, was, that Eldridge was represented in the proceeding resulting in the award, whereas, as the court demonstrated, this was false. The report of the case shows that the judgment was opened on affidavits presented by Eldridge......This court

held that the opening of the judgment was a proper exercise of the discretion of the court on the facts of the case. And," says the court, "it is a precedent in every case, where the defendant, not having had a hearing, by the fraud of his own agent in collusion with the plaintiff, has had rendered against him an unjust judgment; but it is wholly outside the point raised here, that a solemn judgment obtained in adverse proceedings with full notice to the defendant, and afterwards affirmed by this court, will be opened on a general averment of fraud, without a single fact set out to justify such a conclusion." The opinion proceeds: "The latest case reviewed in this court is that of Lebanon Ins. Co. v. Erb, [112 Pa. 149] 1 Central R. 645. Erb had recovered a verdict on a policy of insurance against fire; the company appealed to the Supreme Court, where the writ was non prossed; application was then made in the court below to restrain execution on the judgment, on the ground that Erb, the plaintiff, had set fire to his own building with intent to defraud the company, and that at the trial the company had no knowledge of this fact. The court refused to open the judgment, saying, 'where a defendant in an execution has had a trial and has failed to make a defense which he might have made under the pleadings in the cause, he cannot, after judgment duly entered, seek relief by injunction, staying the collection thereof, unless it clearly appears he was prevented, by the action of the plaintiff in the judgment, from making the defense which would have produced a different result if made at the trial, or at least ought to have produced a different result. The ignorance of the defendant will afford no relief if that ignorance resulted from neglect in not taking proper steps to obtain information. The true rule, we believe, is, that a judgment will not be restrained by injunction where steps have been omitted which ought to have been taken, where ignorance is mixed with negligence......A judgment will not be enjoined, however plainly it may appear that the complain-

ant had a good legal defense, which was not presented or considered through the oversight of counsel or the error of the judge, or from failure on the part of the defendant to collect the evidence in due season and present it in a way to be available.' This was on appeal affirmed' by this court in a per curiam as follows: 'We see nothing in this record to convict the court of error in dissolving the preliminary injunction nor in refusing to open the judgment.' The language of the court below, just quoted, is a correct summary of the law announced in a multitude of cases."

How general the acceptance of the rule laid down in U. S. v. Throckmorton, supra, that extrinsic fraud only will avail in cases like the present, may be learned from the case of Robertson v. Freebury, 87 Wash. 558, 152 Pac. 5, where the authorities are collated, and in the case of Electric Plaster Co. v. Blue Rapids City Township, 81 Kansas 730, reported and annotated in L. R. A. (N. S.), vol. 25, p. 1237, where the authorities are likewise collated and where they are fully discussed both in the text of the court's opinion and in the editorial notes. Another case to which reference should be made is Kountz's App., 2 Walk. 458, in which it is said, per curiam, that "if the perjury of a witness could be made the ground of an equitable interference, even though not discovered until long after the trial, there would be a large crop of appeals in equity. Interest rei publicæ ut sit finis litium; nemo debet bis vexari pro una et eadem causa."

Aside from this legal difficulty which we have pointed out, a careful consideration of the affidavits filed with the record has satisfied us that the appeal is without merit; it discloses no abuse of discretion on the part of the lower court in its refusal to open the judgment and grant a new trial; the counter-affidavits filed by the plaintiff traverse every material averment set out in appellant's petition, with explanations where the traverse was not specific, which, to our mind, as evidently

to the mind of the court below, would make a conviction of perjury improbable and unsafe. The trial was a fair one in which the defendant was fully advised by the pleading of the nature and character of the evidence the plaintiff would be required to produce to establish his case. If the verdict resulted from defendant's unpreparedness to meet the evidence produced, the fault, if any, rested neither with the court nor with the jury. The parties had their day in court, and we see no reason why the verdict should be disturbed.

The order of the court meets with our approval and the appeal is dismissed.