## Commonwealth v. Gittelman.

*Practice, Q. S.—New trial—After-discovered evidence—Impeaching character of Commonwealth's witnesses—Bribery.*

1. A motion for a new trial, based upon after-discovered evidence, is addressed to the sound discretion of the court and will not be granted unless it appears probable that with the added evidence a different verdict will be returned on another trial.

2. Where, after a careful review of all the evidence in the case, the court is satisfied that the defendant was properly convicted, and that upon a retrial a different verdict not only would not, but should not, result, a motion for a new trial on the ground of after-discovered evidence will be dismissed.

3. Where the purpose of the alleged after-discovered evidence is merely to impeach the credibility of a witness upon a purely collateral matter, and does not touch the guilt or innocence of the defendant, the motion will be dismissed.

4. That the prosecutor paid the father of one of the Commonwealth's witnesses $250 for traveling and other expenses to enable him to produce her at the trial, that after the trial a like sum was paid to the witness by the prosecutor by way of compensation for eighteen days' attendance at the trial away from her home, and that before the trial one of the prosecutor's agents gave the witness a gold watch, valued at about $15, do not establish that the witness was bribed.

Motion for a new trial. Q. S. Phila. Co., Oct. Sess., 1922, Nos. 361, 362, 363 and 364.

*L. B. Schofield,* Assistant District Attorney, for Commonwealth.

*William A. Gray* and *William T. Berkowitz,* for defendant.

GORDON, JR., J., Feb. 26, 1924.—The defendant presents thirty-eight reasons for a new trial, of which thirty-seven relate to alleged errors in the admission of testimony and certain parts of the charge of the court, and the thirty-eighth to alleged after-discovered evidence. We are of opinion that none of the reasons advanced warrant the granting of a new trial. The first thirty-seven may be dismissed without comment; the thirty-eighth merits some discussion.

The defendant was convicted on four bills of indictment; two of them charging "false pretences," on which he was convicted of the attempt, and the other two charging "preparing and forwarding a fraudulent claim, etc., to an insurance company; attempting to collect a fraudulent claim from an insurance company," on which he was convicted generally. One of the principal witnesses for the Commonwealth, Mrs. Rosalie Karsner, who came to Philadelphia from her home in Steubenville, Ohio, for the purpose of testifying, was asked, on cross-examination, whether she had been given, promised or expected any money or other consideration for testifying other than her witness fees and expenses. To all of the questions on this subject she replied in the negative. The defendant contends that he has discovered since the trial that this testimony was not true, and submits the affidavits of two persons, Mrs. Anna M. Taylor, formerly Mrs. Anna Karsner, a stepmother-in-law of the witness, and herself a witness at the trial, and Joseph Ryan, an acquaintance of Mrs. Taylor. In addition to the affidavits submitted, we sat and heard

the testimony of these affiants and of the witnesses called by the Commonwealth upon the subject.

Mrs. Taylor's testimony may be dismissed with the observation that it has no relevancy whatever to the testimony alleged to be untrue, and that, as it is the testimony of one who was present and a witness at the trial, it is in no sense after-discovered evidence.

Mr. Ryan's testimony is to the effect that when Mrs. Karsner was in Philadelphia for the trial, she met him in the Bellevue-Stratford Hotel, and in a conversation told him that she was being well paid for what she was doing at the trial, and that she had a promise of a gold watch from a Mr. Milch, an agent of the insurance company which had insured the defendant. The defendant claims that he did not know the witness at the time of the trial, neither had he then heard of the conversation in question; that, upon learning of the conversation, he employed the witness to go to Steubenville, Ohio, to see Mrs. Karsner and endeavor in further friendly conversation to extract additional declarations from her upon the subject, which resulted, according to the witness, in the further statement by Mrs. Karsner that she had received a watch and $500 from Mr. Milch for testifying. This is the "after-discovered evidence" upon which a new trial is sought.

In reply to this testimony, the Commonwealth called Mrs. Karsner, who denied or explained various features of the testimony of Ryan, and it also called E. Stanton Pearce, Esq., District Attorney of Jefferson County, Ohio, in which Steubenville is situated, Mr. Wilbur G. Fowler, father of Mrs. Karsner, and the Mr. Milch already referred to. The purpose of this testimony was to disclose the nature and extent of payments made to Mrs. Karsner or her family apart from the expenses of Mrs. Karsner in coming to Philadelphia to attend the various stages of the case at which her presence was required, and which covered in all about eighteen days. From the testimony of these witnesses, it appears that Milch located Mrs. Karsner in Ohio, and went there to interview her; that one evening, at dinner, Mrs. Karsner remarked that she had lost or broken her wrist watch, and that Mr. Milch gave her a watch which he says he had bought for his daughter, and for which he originally paid $15; that when Milch went to Ohio, he secured an introduction to Mr. Pearce, the local district attorney, by letters from the Insurance Commissioners of Pennsylvania and the Attorney-General of Ohio. When the time for going to Philadelphia arrived, Mrs. Karsner had a young baby, a few weeks old, which was being nursed by her. This necessitated providing a companion for her on her trip East, and Mrs. Karsner and her father went with Milch before the district attorney, who drew up an agreement between Milch and the father, by which the father undertook for $250 to produce his daughter when required in Philadelphia and to send her mother with her. No further payments or agreements to pay money were made before the trial. After the trial, the insurance company sent Mrs. Karsner a check for $250. These were all the payments shown to have been made by the insurance company to Mrs. Karsner or any of her family. The facts respecting them were brought out by the Commonwealth and, taken as a whole, satisfy us that they would not be likely to, and should not, result in a different verdict. The giving of the watch to Mrs. Karsner by Milch was indiscreet and cannot be approved from the standpoint of caution, but it does not appear to have accompanied any attempt to procure false testimony from the witness. The payment to the father was made openly, for a legitimate purpose and under the supervision of the district attorney of the county; and the mere unexpected payment of $250 to Mrs. Karsner after the trial as

4 D. & C.

compensation for her visits to Philadelphia on eighteen days, including two trips from and to Ohio, is reasonable and cannot fairly be said to have had any effect on her previous testimony. A motion for a new trial, based upon after-discovered evidence, is addressed to the sound discretion of the court, and will not be granted unless it appears probable that with the added evidence a different verdict will be returned on another trial: 29 ·Cyc., 901; Moore *v.* Philadelphia Bank, 5 S. & R. 41; Gazzam *v.* Reading, 202 Pa. 231; McEvoy *v.* Quaker City Cab Co., 267 Pa. 527; Com. *v.* Mellon, 81 Pa. Superior Ct. 20. We are satisfied, after a careful review of all the evidence in the case, that the defendant was properly convicted, and that, upon a retrial, a different verdict not only would not, but also should not, result. The so-called "after-discovered evidence" presented does not warrant the granting of a new trial for other reasons. It does not touch upon the main issue in the case— the guilt or innocence of the defendant. Its purpose is merely to impeach the credibility of a witness upon a purely collateral matter. It is well settled that a new trial will not be granted on newly-discovered evidence which merely serves to impeach a witness by showing inconsistent statements, or contradictions on immaterial or collateral matters (29 Cyc., 918; Ream *v.* Oldweiler, 2 Leg. Gaz. 147; Com. *v.* Bellis, 1 Northamp. Co. Repr. 46; McEvoy *v.* Quaker City Cab Co., 267 Pa. 527; Baughn *v.* Benson, 77 Pa. Superior Ct. 181), unless the verdict was doubtful (O'Bryan *v.* Bowers, 10 Pa. C. C. Reps. 254), which it is not in the present case.

In Baughn *v.* Benson, 77 Pa. Superior Ct. 181, the Superior Court, speaking through Porter, J., said: "We are not convinced that the court below was guilty of an abuse of discretion in refusing a new trial. The defendants, in support of their motion, argued that certain depositions which had been taken after the trial established that the plaintiff had been guilty of perjury in testifying at the trial. Nearly all of the testimony contained in the depositions on behalf of the defendants related to matters which were not material to the real issue in the case; most of it related to matters of detail which were fully threshed out at the trial and was merely cumulative. The counter-affidavits filed by the plaintiff traversed every material averment set out in defendants' petition, with explanations, where the traverse was not specific, which would, in the opinion of the court, make a conviction of perjury improbable and unsafe. The trial was a fair one, in which the defendants were fully advised by the pleadings of the nature and character of the evidence which the plaintiff would produce to establish his case. The question being thus presented, the court acted within its discretion, and, as no abuse of that discretion clearly appears, we cannot pass upon the merits of the case: McEvoy *v.* Quaker City Cab Co., 267 Pa. 527."

The defendant had a fair trial, at which his guilt was satisfactorily demonstrated. The evidence upon which he now relies does not show perjury by the witness in the main issue tried. It is contended by the defendant that it supplies ground for two inferences: First, that Mrs. Karsner may have been bribed to testify; and, second, that, therefore, her testimony in the principal issue probably was false. This is highly speculative, and, in our opinion, wholly unwarranted by the testimony presented. It is too indirect and remote to justify us in disturbing a verdict rendered after a careful trial, in which the defendant had full opportunity to present his entire defence.

The motion for a new trial is, therefore, overruled.