**Maj v. Maj**

C.P. of Monroe County, nos. 1205 DR 2003, 8828 CV 2003.

*Elvira LaBarre,* for plaintiff.
*Walter John Maj Jr.,* pro se.

ZULICK, *J.,* February 9, 2007—Walter John Maj Jr. and Geraldine Denise Maj were divorced by decree of this court on March 10, 2006. The decree incorporated

provisions of the master's recommendations for equitable distribution including distribution of real property the parties owned in New Jersey.

Geraldine attempted to enforce the decree by filing an action to enforce a foreign judgment in the Superior Court of New Jersey, Chancery Division in May 2006. Walter opposed enforcement of the decree. The New Jersey Superior Court, the Honorable Ann R. Bartlett, J.S.C. by order of August 4, 2006 found that this court had subject matter and in personam jurisdiction but denied the request to enforce the decree on other grounds.

Geraldine then filed a motion for remand to master for additional hearing with this court on October 26, 2006. A rule to show cause was issued to Walter on October 30, 2006, to which he did not respond. Geraldine filed a petition for hearing on December 5, 2006. A hearing on the petition was held before the court rather than the master on January 16, 2007. Both Walter and Geraldine appeared and testified.

## BACKGROUND

The parties were married on May 5, 1974 in Somerset County, New Jersey. Geraldine filed for divorce in Monroe County on November 5, 2003. Service of the divorce complaint was properly made by Geraldine and acknowledged by Walter.

On June 26, 2004, Geraldine filed an amended complaint requesting that a divorce be entered on the grounds of an irretrievable breakdown of the parties' marriage, and that the court equitably distribute the marital estate. On April 8, 2005, the Honorable Margherita Patti Worthington, J., issued an order compelling Walter to answer interrogatories and permitting an appraisal of the former

marital residence. Walter did not comply, for which I found him in contempt of court on September 1, 2005. Walter continued to ignore the discovery orders, which led to an order precluding him from opposing Geraldine's evidence of values for the marital home in South Bound Brook, New Jersey, and a W&G Distributions/Arnold Bread Franchise which was part of the marital estate.

Walter did not file an answer to the divorce complaint, nor did he file an inventory and appraisement or a pretrial statement as required by the Rules of Civil Procedure. A master's hearing was held on November 22, 2005. On March 10, 2006, I entered a divorce decree incorporating the recommendations of Divorce Master Daniel P. Corveleyn, Esquire.

When Walter failed to comply with the divorce decree's distribution of the parties' real property located in New Jersey, Geraldine filed the action described above in New Jersey to enforce the divorce decree. The motion was denied by Judge Bartlett of the Superior Court of New Jersey, Somerset County, Chancery Division— Family Part. Judge Bartlett entered an opinion and order on August 4, 2006 determining that the Monroe County, Pennsylvania Court of Common Pleas (this court) had subject matter jurisdiction of the divorce and in personam jurisdiction of Walter Maj in this divorce action. However, the New Jersey court refused to enforce the divorce decree saying "it appears that vital documents were not submitted to the Pennsylvania court." Decision of New Jersey Superior Court. The New Jersey trial court went on to state:

"This court finds that the parties' October 30, 2001 agreement, submitted by the defendant in this action, and pertaining to the division of property, the Arnold Bread

franchise and credit card debt, was not submitted by the plaintiff in the original complaint in divorce filed on November 5, 2003. Therefore, it appears that this agreement was not considered by the master in drafting of the master's report. This court does not have the authority to amend that judgment but equitable principles, specifically the doctrine of unclean hands, preclude enforcement of the Pennsylvania judgment. The defendant should seek remedy in the Court of Common Pleas of Monroe County, Pennsylvania, where the divorce decree and master's report was originated." *Id.*

## FINDINGS OF FACT

(1) Walter Maj resides at 12 Kennedy Avenue, South Bound Brook, New Jersey.

(2) He was served with a copy of the divorce complaint by United States certified mail, on November 12, 2003.

(3) He received notice of the divorce master's hearing held on November 22, 2005, but did not attend. N.T. 10.

(4) The parties entered into a postnuptial agreement dated October 31, 2001. Plaintiff's exhibit 1.

(5) The parties' agreement provided in paragraph 1 that Walter would pay for renovations and repairs to their South Bound Brook, New Jersey house as needed and in September 2003 would put the house up for sale. He further agreed to pay the mortgage, taxes and "all living expenses while living in South Bound Brook." Agreement, paragraph 1.

(6) The parties' agreement provided in paragraph 2 that Geraldine would live in their Analomink, Pennsylvania house. Walter would be responsible for payment of the mortgage and taxes on the Analomink house, and

the equity loan against the South Bound Brook house, while Geraldine lived in the Analomink house. Geraldine agreed to move out of the Analomink house within two months of the sale of the New Jersey house, and to transfer title to the Analomink house to Walter. Agreement paragraph 2.

(7) The parties' agreement provided in paragraph 3 that Walter would buy Geraldine's interest in the Best Foods-Arnold Bread franchise over a period of time. These payments were to begin with $500 per month payments from Walter to Geraldine over a period of five years.

(8) Walter did not make the renovations necessary to sell the South Bound Brook house. N.T. 10.

(9) Walter stopped paying the mortgage payments and the taxes on the Analomink house in December 2003, and the parties eventually sold it to third parties on February 27, 2004. N.T. 13, 23; see plaintiff's exhibit 1 from the master's hearing.

(10) Walter never put the South Bound Brook house up for sale, and was still living in the house at the time of the hearing on January 16, 2007.

(11) Walter made some payments of $500 per month to Geraldine for the Arnold Bread franchise as required by the agreement, but stopped making these payments in violation of the terms of the written agreement. N.T. 24.

(12) By the time this divorce action was filed on November 5, 2003, Walter was not in material compliance with the written agreement of October 31, 2001, and neither party was insisting on enforcement.

(13) Neither party took any action in this court to enforce the agreement of October 31, 2001.

(14) Walter filed an answer and counterclaim in the Superior Court of New Jersey, Chancery Division—Family Part, Somerset County stating in paragraph 3 of the counterclaim that the parties amended the written agreement of October 31, 2001 by a later writing dated May 28, 2003.

(15) The parties did not sign the alleged amendment of May 28, 2003, and never reached an agreement on its terms. N.T. 24.

(16) The parties had no valid agreement addressing the distribution of their marital property in effect at the time of the master's hearing on September 1, 2006.

## DISCUSSION

Under Pennsylvania law, a petition to modify a divorce must be filed within 30 days of the date of the decree. 23 Pa.C.S. §3332, provides as follows:

"*Section 3332. Opening or vacating decrees*

"A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. §5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of

precluding a fair hearing or presentation of one side of the case." 23 Pa.C.S. §3332.

The section of the Judiciary Act referred to in this statute, 42 Pa.C.S. §5505, provides that:

"Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. §5505.

Here, neither party requested reconsideration of the decree and the decree was not modified or rescinded. It is thus a final judgment of this court.

In order to consider untimely-filed economic claims, the divorce decree must be either opened or vacated. *Melton v. Melton,* 831 A.2d 646, 651 (Pa. Super. 2003). Either party had 30 days after the date of the decree to seek to open the decree on grounds that the decree was procured by intrinsic fraud or that there was new evidence relating to the cause of action which would sustain the attack upon its validity. No such petition was filed, so that route to challenge the decree has been eliminated.

The parties have five years from the date of the decree to seek to open the decree on grounds of extrinsic fraud. In *McEvoy v. Quaker City Cab Co.,* 267 Pa. 527, 110 A. 366 (1920), our Supreme Court first distinguished intrinsic fraud from extrinsic fraud:

"By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another

instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there. *Pico v. Cohn,* 91 Cal. 129, [25 P. 970 (1891)]. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial. *Bleakley v. Barclay,* 75 Kansas 462 [89 P. 906 (1907)]." *Justice v. Justice,* 417 Pa. Super. 581, 588-89, 612 A.2d 1354, 1358-59 (1992), quoting *Fenstermaker v. Fenstermaker,* 348 Pa. Super. 237, 243, 502 A.2d 185, 188 (1985), quoting *McEvoy v. Quaker City Cab Co.,* 267 Pa. 527, 536, 110 A. 366, 368 (1920).

Here neither party contended in the hearing before me on January 16, 2007 that there was intrinsic or extrinsic fraud involved in Geraldine's failure to introduce or rely upon the agreement of October 31, 2001. Both parties conceded that the agreement of October 31, 2001 was superseded by events and that it was no longer controlling of their economic affairs at the time of the master's hearing.

Walter testified on January 16, 2007 that the parties had reached another agreement, N.T. 19, but he took no action to present this evidence to this court during the

divorce proceedings. He presented no such signed agreement as evidence in the January 16, 2007 hearing either. Geraldine testified credibly that no such agreement existed. N.T. 24. The parties' counsel exchanged numerous letters (14) during settlement negotiations, the latest of which, dated September 28, 2006 from Thomas J. Welchman, Esquire, Walter's New Jersey counsel, indicated that no agreement had been reached. N.T. 19; plaintiff's exhibit 18. In short, there was no competent evidence of extrinsic fraud offered by Walter.

Geraldine has requested relief from this court to assist in the determination of whether she exhibited fraud or ran afoul of the equitable doctrine of "unclean hands" by not introducing the 2001 agreement during the master's hearing. This was the basis for the Somerset County, New Jersey ruling which refused to enforce the divorce decree. I address this issue as it is within the equity powers and jurisdiction of this court. See 23 Pa.C.S. §§3104, 3323(f).[1] The inevitability of further

_____

1. Section 3104 Bases of jurisdiction, provides as follows:

"(a) Jurisdiction—The courts shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and shall determine, in conjunction with any decree granting a divorce or annulment, the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:

"(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial or separation agreement . . .

"(4) Any property settlement agreement involving any of the matters set forth in paragraph (1), (2) and (3) as submitted by the parties . . . ."

Section 3323(f) provides as follows:

"In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interest of the party or to effectuate the purposes of this part and may grant such other relief or remedy as equity

litigation also renders a declaratory judgment appropriate under Pennsylvania law. *Stilp v. Commonwealth,* 910 A.2d 775, 786 (Pa. Commw. 2006); 42 Pa.C.S. §§7531-7541.

As Geraldine's brief correctly notes, marital settlements are governed by contract law, *Vaccarello v. Vaccarello,* 563 Pa. 93, 757 A.2d 909, 913 (2000), and so breaches can render them invalid, *Harrison Estate,* 456 Pa. 356, 359, 319 A.2d 5, 6 (1974). Such settlements are valid (prior to a breach by either party) as long as they are fair and equitable, *Lurie v. Lurie,* 246 Pa. Super. 307, 370 A.2d 739 (1976), and include adequate consideration, *Commonwealth ex rel. Jablonski v. Jablonski,* 179 Pa. Super. 498, 118 A.2d 222 (1955).

The Pennsylvania Superior Court most recently dealt with the issue of whether a breach invalidated an antenuptial agreement in *In re O'Brien,* 898 A.2d 1075 (2006). The court held: "[b]ecause the agreement plainly sets out the parties' reliance on the original will, and because husband revoked the original will and put in its place a will with different terms, we conclude that the trial court did not err in finding that husband failed to abide by the terms of the agreement." *Id.* at 1083.

Full and fair performance is generally required in the case of an antenuptial agreement or breach invalidates the whole. *In re Estate of Cummings,* 493 Pa. 11, 16, 425 A.2d 340, 342 (1981), citing *Harrison, supra.* Although *Cummings* dealt with an antenuptial agreement, its reasoning applies here, even if Walter did not concede that the agreement in question was no longer valid. Since

and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause."

Walter admitted having breached at least two provisions of the October 31, 2001 agreement, N.T. 19, it would be invalidated as was the agreement in *Cummings.*

Finally, Geraldine did not acquire unclean hands as a result of not disclosing the agreement in the master's hearing. Pennsylvania courts have described the principle of unclean hands as follows: "[a] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. . . . The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." *County of Luzerne v. Luzerne County Retirement Board,* 882 A.2d 531, 536 (Pa Commw. 2005), citing *Terraciano v. PennDOT,* 562 Pa. 60, 69, 753 A.2d 233, 238 (2000). Since the agreement in question was invalid according to both the parties and Pennsylvania law, Walter suffered no detriment and Geraldine did not act unfairly in not providing it to the court.

## CONCLUSIONS OF LAW

(1) The agreement of October 31, 2001 was breached by Walter before this divorce action was begun.

(2) The Analomink property was sold by the parties shortly after this divorce action was begun, so the agreement as written could not be enforced by this court.

(3) Geraldine did not commit extrinsic or intrinsic fraud by failing to introduce the defunct agreement of October 31, 2001 during the master's hearing.

(4) At the time of the master's hearing on September 1, 2006, the parties' agreement of October 31, 2001 was no longer a binding agreement and was therefore null and void.

## ORDER

And now, February 9, 2007, it is ordered that plaintiff Geraldine Denise Maj's request to have the parties' October 31, 2001 agreement declared null and void is granted. That agreement is hereby determined to have no force or effect. The divorce decree of March 10, 2006 is not modified and the defendant is directed to comply with its terms.

