J-A14022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANDREW KUNDRATIC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SOPHIA KUNDRATIC, | |
| Appellee | No. 2057 MDA 2013 |

Appeal from the Order Entered October 31, 2013
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2006-04975

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 26, 2014**

Appellant, Andrew Kundratic, appeals from the order entered on October 31, 2013.  We affirm.

Appellant and Sophia Kundratic (hereinafter "Ms. Kundratic") married on May 9, 1992.  On May 2, 2006, Appellant filed a complaint in divorce against Ms. Kundratic, seeking a decree in divorce and an order equitably dividing the marital property.  Complaint in Divorce, 5/2/06, at 1-4.  The trial court appointed a master to determine the equitable distribution issues and the master held a three-day equitable distribution hearing, which spanned the days of January 12, 2009, July 2, 2009, and July 9, 2009.

During the equitable distribution hearing, the parties presented various real estate valuations for the marital residence.  As is relevant to the current appeal, Ms. Kundratic presented evidence of an expert real estate appraisal,

_____

* Retired Senior Judge assigned to the Superior Court.

prepared in May 2007 by a person named Joan Conrad, which appraised the property at $279,000.00. N.T. Hearing, 7/2/09, at 59-65. The master also received a competing expert report, prepared in January 2007 by a person named Tom Leighton, which appraised the property at $359,000.00. *Id.* at 65.

On November 10, 2009, the master issued his report and recommendation and, with respect to the value of the marital residence, the master accepted Ms. Conrad's expert appraisal of $279,000.00. Master's Report and Recommendation, 11/10/09, at 4. The master recommended that the trial court award Ms. Kundratic 55% of the entire marital estate (including the marital residence) and Appellant 45% of the entire marital estate. *Id.* at 8.

Both parties filed exceptions to the master's report. As is relevant to the current appeal, one of Appellant's exceptions was that the master improperly valued the marital residence. The trial court denied this particular exception because, it declared, the parties had only submitted one appraisal of the marital residence – which was the $279,000.00 appraisal performed by Ms. Conrad. Trial Court Opinion, 8/2/10, at 8. Therefore, the trial court held, since only one appraisal was submitted to the master, the marital residence was properly valued at $279,000.00. *Id.* However, the trial court granted certain other exceptions to the master's report and the trial court remanded the case to the master for further proceedings. *Id.* at 1-18.

On July 18, 2011, the master issued a supplemental report and recommendation, wherein the master made additional factual findings and recommendations in the case. On September 21, 2011, the trial court entered its divorce decree, decreeing that Appellant and Ms. Kundratic were divorced and that the trial court was incorporating the November 10, 2009 master's report and recommendation and the July 18, 2011 master's supplemental report and recommendation into the decree. Trial Court Decree, 9/21/11, at 1.

Appellant filed a notice of appeal to this Court. On appeal, Appellant raised a number of claims, including that the trial court "erred in determining the value of the marital residence because it failed to consider both appraisals submitted on the record." *See Kundratic v. Kundratic*, 62 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 3. A three-judge panel from this Court held that all but one of Appellant's claims were meritless. Yet, with respect to Appellant's claim that the trial court erred in failing to consider both of the marital home appraisals, the panel observed that both Ms. Conrad's and Mr. Leighton's appraisals were given exhibit numbers and that both appraisals were entered into evidence during the equitable distribution hearing. Thus, we held:

> Because the record does contain evidence of the entry of the exhibits, the trial court erred in finding there was only one submitted appraisal. We remand for the court to consider all of the evidence of record as to the issue and determine the fair market value for the marital residence for equitable distribution purposes.

*Kundratic v. Kundratic*, 62 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 4 (internal footnotes omitted).

Nevertheless, we emphasized: "[w]e do not preclude the trial court from finding the [m]aster's calculation to be correct; however, first the court must examine the two appraisals and review the testimony of the parties on the issue." *Id.* at 4 n.3. We affirmed the remainder of the trial court's decree. *Id.* at 9.

While the case was on remand to the trial court – and despite the fact that our remand order specifically limited the scope of remand to a determination of "the fair market value of the marital residence for equitable distribution purposes" – on September 23, 2013, Appellant filed a petition in the trial court to vacate the September 22, 2011 divorce decree. Within this petition, Appellant alleged that, "[s]ubsequent to the [entry of the divorce d]ecree, [Appellant] learned of [] instances of extrinsic fraud which constitute a basis for vacating the [d]ivorce [d]ecree." Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 2. Essentially, all of Appellant's allegations of "extrinsic fraud" consisted of claims that Appellant's own prior counsel were ineffective while representing Appellant.[1] *Id.* at 2-5.

_____

[1] Specifically, Appellant claimed: 1) during a protection from abuse hearing, Appellant's counsel "erroneously advised [Appellant] to agree to the issuance of a [protection from abuse o]rder against [Appellant];" 2) during the equitable distribution hearing, Appellant's counsel failed to "pursue reasonable action to enforce distribution of the marital estate;" 3) Appellant's prior counsel failed to "file and request hearings on [p]etitions for
*(Footnote Continued Next Page)*

On October 31, 2013, the trial court denied Appellant's petition to vacate the divorce decree without a hearing and, on November 15, 2013, Appellant filed a notice of appeal from the trial court's order.[2]  Appellant now raises one claim on appeal:

> Did the trial court err by denying the petition to vacate divorce decree without hearing any evidence on the merits.

*(Footnote Continued)* ――――――――――――

[s]pecial [r]elief seeking distribution of assets;" 4) Appellant's prior counsel "advised [Appellant] not to pursue custody rights with his minor child until after the divorce was complete;" 5) Appellant's prior counsel failed to pursue contempt proceedings against Ms. Kundratic on two separate occasions; 6) Appellant's prior counsel failed to present evidence of Appellant's disability; 7) during the equitable distribution hearing, Appellant's counsel entered into a stipulation that valued an asset at a lower amount than it was worth; 8) Appellant's prior counsel failed to "enforce the time limitations set forth in the [o]rder [a]ppointing [the m]aster;" 9) Appellant's prior counsel "failed to pursue reasonable action in retrieving tens of thousands of dollar[s'] worth of marital assets" that were hidden by Ms. Kundratic; and, 10) Appellant's prior counsel erroneously advised Appellant "to continue paying all marital liabilities" during the equitable distribution proceedings.  Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 2-5.  The only allegations that pertain to individuals other than Appellant's own prior attorneys are that:  in April 2007, Appellant was excluded from the marital residence and, as a result, Appellant could not retrieve various, unidentified "legal papers" until July 2008; and, in 2009, Ms. Kundratic's attorney "misrepresented to the [master] that [Ms. Kundratic] had a co-signer to re-finance the mortgage on the marital residence." *Id.* at 2-3.

[2] While the case was on remand, the trial court explicitly considered both Ms. Conrad's and Mr. Leighton's appraisals.  Trial Court Opinion, 10/1/13, at 1-2.  Further, after considering all the evidence of record, on October 1, 2013, the trial court again concluded that the value of the marital residence was $279,000.00.  Trial Court Order, 10/1/13, at 1.  We note that Appellant filed a notice of appeal from the trial court's October 1, 2013 order and we affirmed the trial court's order on July 9, 2014.  *Kundratic v. Kundratic*, ____ A.3d ____, 1888 MDA 2013 (unpublished memorandum) at 1-9.

Appellant's Brief at 2 (some internal capitalization omitted).

As explained above, our original remand order was limited in scope. Specifically, we ordered a remand so that the trial court could determine "the fair market value of the marital residence for equitable distribution purposes." **Kundratic v. Kundratic**, 62 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 4. Notwithstanding the limited scope of our remand order, Appellant attempted to raise additional issues on remand before the trial court. Specifically, Appellant attempted to claim that the entire divorce decree must be vacated, as it was procured by "extrinsic fraud." Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 1-5. However, since our remand order carried an express limitation, the trial court was not permitted to consider Appellant's newly raised claims. **Quaker State Oil Ref. Co. v. Talbot**, 185 A. 586, 588 (Pa. 1936) ("in remanding a case for rehearing, [the Supreme Court] may limit the scope thereof to certain defined issues. This limitation restricts the power of the court below to a determination of those issues"); **Levy v. Senate of Pa.**, ___ A.3d ___, 2014 WL 2694245 (Pa. Cmwlth. 2014) ("[w]here a case is remanded for a specific and limited purpose, issues not encompassed within the remand order may not be decided on remand. A remand does not permit a litigant a proverbial second bite at the apple") (internal quotations and citations omitted); **see also Commonwealth v. Lawson**, 789 A.2d 252, 253 (Pa. Super. 2001) ("where a case is remanded to resolve a limited

- 6 -

issue, only matters related to the issue on remand may be appealed [to the Superior Court]").

Therefore, since Appellant's petition to vacate the divorce decree attempted to raise issues that were not encompassed within our limited remand order, the trial court properly denied Appellant's petition without a hearing.

Further, we note that – even if the trial court had the authority to consider Appellant's petition – the trial court properly denied the petition, as the petition is meritless. According to Appellant's petition, the divorce decree must be vacated, as it was procured by extrinsic fraud. Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 1-5. As our Supreme Court has explained:

> By the expression "extrinsic or collateral fraud" is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation. . . . Where [an] alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the [jurisdiction] of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.

- 7 -

*McElvoy v. Quaker City Cab Co.*, 110 A. 366, 368 (Pa. 1920); *Justice v. Justice*, 612 A.2d 1354, 1358 (Pa. Super. 1992); *see also* BLACK'S LAW DICTIONARY 686 (8th ed. 2004) (defining "extrinsic fraud" as: "[d]eception that is collateral to the issues being considered in the case; intentional misrepresentation or deceptive behavior outside the transaction itself (whether a contract or a lawsuit), depriving one party of informed consent or full participation").

The allegations in Appellant's petition do not (as Appellant claims) amount to "extrinsic fraud." First, Appellant's petition mainly consists of claims that Appellant's own prior counsel were ineffective in representing Appellant. Yet, as we have held, allegations of ineffective assistance of counsel do not amount to extrinsic fraud. *Ratarsky v. Ratarsky*, 557 A.2d 23, 26 (Pa. Super. 1989) ("the [appellant's] trial counsel's performance cannot be imputed to the [appellee] and labeled as fraud"); *Stockton v. Stockton*, 698 A.2d 1334, 1338 (Pa. Super. 1997) ("appellant's dissatisfaction with his counsel does not [constitute extrinsic fraud]. . . . [A] party cannot attribute their own attorney's inadequate performance to the other party and label such performance as fraud") (internal citations omitted); *Melton v. Melton*, 831 A.2d 646, 651-652 (Pa. Super. 2003) (holding that mere ineffective assistance of counsel does not constitute extrinsic fraud). Thus, the trial court did not err when it denied the ineffective assistance of counsel claims without a hearing.

The trial court also did not err when it denied the remaining claims in Appellant's petition. The remaining allegations in Appellant's petition consist of undeveloped declarations that: 1) in April 2007, Appellant was excluded from the marital residence and, as a result, Appellant could not retrieve various, unidentified "legal papers" until July 2008 and 2) in 2009, Ms. Kundratic's attorney "misrepresented to the [master] that [Ms. Kundratic] had a co-signer to re-finance the mortgage on the marital residence." Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 2-5. However, with respect to these final two allegations, Appellant failed to claim that the actions or inactions caused Appellant any sort of prejudice or that the events "prevented a fair submission of the controversy." *See McElvoy*, 110 at 368 ("[b]y the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy").

Certainly, with respect to the issue of the "legal papers," Appellant completely failed to identify: what "legal papers" were withheld; the importance of the "legal papers" to Appellant's case; or, how the absence of the papers harmed Appellant's case. *See* Appellant's Petition to Vacate Divorce Decree, 9/23/13, at 2-5. Further, with respect to the alleged "misrepresentation," Appellant never alleged that the "co-signer to re-finance the mortgage on the marital residence" **did not** sign the mortgage or that Ms. Kundratic was somehow unable to refinance the mortgage on the marital residence. *See id.* Therefore, with respect to these final two

allegations, Appellant's petition failed to allege that the actions or inactions "prevented a fair submission of the controversy." As such, the allegations in Appellant's petition did not entitle Appellant to relief and the trial court did not err when it denied Appellant's petition without a hearing.[3]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014

---

[3] Within Ms. Kundratic's brief, Ms. Kundratic requests that we remand the case to the trial court, so that the trial court may award her attorneys' fees for being forced to respond to this "frivolous" appeal. Ms. Kundratic's Brief at 8. We will not remand the case for a determination of attorneys' fees. Although meritless, we cannot conclude that the appeal was totally frivolous. We note, however, that Appellant's litigiousness may result in a fee award at some point.