# ESTATE OF ED. HELFENSTEIN, DECEASED.

APPEAL BY E. C. HELFENSTEIN ET AL. FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 4, 1890—Decided May 26, 1890.

1. A deed conveying lands to hold and retain " as a security, and keep the same for the space of one year after the following notes become due, for the purpose of securing and making safe to creditors the following sums," and " after the above-mentioned notes or obligations are paid. . . . . to re-convey," is but a mortgage in trust for the creditors named in it.

2. Where, in such case, the account of the mortgage trustee was filed and confirmed and the fund shown thereby distributed, in a court of general jurisdiction, its decree, though the trustee was a non-resident, was conclusive in all collateral proceedings, not only as to all matters that actually were raised, but as to all that might have been raised.*

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 190 January Term 1890, Sup. Ct.; court below, No. 366 September Term 1885, C. P. No. 3.

On November 28, 1885, George M., recently called Edward C. Helfenstein, for himself and in behalf of his mother Julia A. H. Powell, and his sister Anna A. Helfenstein, presented their petition averring that they were the widow and children of Edward Helfenstein, who died in Northumberland county, intestate, on August 23, 1861; that on November 1, 1857,

---

* See § 15, act of June 14, 1836, P. L. 632.

the decedent conveyed to Wm. H. Keichline, of Philadelphia, certain parcels of real estate situate in Northumberland county, in trust to secure certain creditors in the payment of the grantor's indebtedness to them, and, averring that said indebtedness had been paid either actually, or presumptively by lapse of time, prayed for an account and for a re-conveyance.

An answer having been filed to a citation awarded, the matter was so proceeded in that on January 27, 1887, the respondent, protesting that, by reason of his prior accounting in the Court of Common Pleas of Northumberland county, he was not liable to account in the Court of Common Pleas of Philadelphia county, exhibited his account as directed. The petitioners then filed a supplemental petition averring that the account filed was not in accordance with the order of the court, and praying that the respondent be ordered to file an account of the rents and profits received by him and paid on account of the said properties. To the rule granted upon this petition the respondent answered specifically and denied that he had ever received rent from the properties, or profit therefrom, except as set forth in the account he had already filed. Whereupon an order was made, March 14, 1887, appointing *Mr. Mayer Sultzberger* " auditor in the case."

On April 5, 1889, the auditor filed a report, by which, after citing Mengas' App., 19 Pa. 221, as indicating his duties, he proceeded in his findings of fact, which are briefly abstracted as follows:

That on November 1, 1857, the decedent, Edward Helfenstein, residing in Northumberland county, made to Wm. H. Keichline a conveyance of certain parcels of real estate in said county as therein described,

" To have and to hold the same to the said Wm. H. Keichline, his heirs and assigns forever, in trust, however, and to the intent and purpose as follows, to wit: That he, said Wm. H. Keichline, shall and do hold and retain the said property, lands and tenements as a security, and keep the same for the space of one year after the following notes become due, for the purpose of securing and making safe to creditors the following sums, to wit: [here follows a list of the notes with the names of the creditors to whom payable, the deed concluding:] All

### Auditor's Report.

being debts due the above-mentioned firms by him, the said Edward Helfenstein; and the said Wm. H. Keichline, his heirs and assigns, after the above mentioned notes or obligations are paid and all legal charges, to re-convey the above described property by deed clear of all encumbrances to the said Edward Helfenstein, his heirs, assigns or executors."

That on February 8, 1861, the said Edward Helfenstein made an assignment for the benefit of creditors to Charles P. Helfenstein and John Foy, and that no inventory, or appraisement, or account was ever filed by the assignees; that on August 23, 1861, Edward Helfenstein died, intestate, leaving a widow and children, the petitioners, to survive him, and Charles P. Helfenstein became his administrator and subsequently settled an account, confirmed on March 10, 1868, showing no balance for distribution.

That on June 19, 1863, Wm. H. Keichline caused to be issued in the Court of Common Pleas of Northumberland county a writ of scire facias sur mortgage on the conveyance referred to, supra, which was served upon Charles P. Helfenstein, the administrator of the grantor, and the suit proceeded to judgment on August 14, 1865, upon which on January 7, 1867, the properties described in the deed were sold at sheriff's sale to Wm. H. Keichline, who as the first lien creditor receipted to the sheriff for $5,465, being the proceeds of sale less costs.

That at the August Term 1868, of the Court of Common Pleas of Northumberland county, the said Keichline, by petition filed, averring that his said purchase of the properties had been made for the benefit of the creditors, obtained an order of the court and thereafter sold the properties to Joseph De Sha Patton for the sum of $4,700; and that subsequently, to wit, on April 28, 1869, the said Keichline filed his first and final account as "trustee of E. Helfenstein, deceased, under certain mortgage trusts," and the same was approved by the said Court of Common Pleas of Northumberland county on August 3, 1869.

That thereupon the said court appointed an auditor to audit and adjust his said account, and to distribute the balance in his hands as shown thereby; that the said auditor found the net balance for distribution to be $3,500.53, and the total amount of creditors' claims under the trust mortgage to be $5,358.

awarding to them 65 per cent upon their claims; and that the said Keichline paid to the several distributees, in the auditor's report named, the full amounts of their awards.

Finally, that the said Keichline did not remain in possession of the properties conveyed to him by the deed of November 1, 1857, and did not continue in receipt of the rents and profits thereof, and that no sufficient evidence had been presented to warrant a finding that he ever received any rents, issues or profits therefrom.

As conclusions of law from the foregoing facts,—citing and considering Pearce v. Wilson, 111 Pa. 21; act of 1705, 1 Sm. L. 59; Wharf v. Howell, 5 Binn. 499; Spencer v. Haynes, 4 W. N. 153; Johnson's App., 103 Pa. 373; Wetherill v. Stillman, 65 Pa. 105; Youngman v. Railroad Co., 65 Pa. 278; Doyle v. Commonwealth, 107 Pa. 20; Hoffman v. Coster, 2 Wh. 453,—the auditor ruled, that the conveyance of November 1, 1857, was a mortgage, creating a trust in the mortgagee which was purely and simply a trust for the creditors, not complicated by the alleged trust to re-convey, and reported:

Holding these views, the auditor is compelled to find that the proceedings instituted by Keichline in Northumberland county, which ended by a sale of the mortgaged premises under a levari facias and their purchase by Keichline as the mortgage creditor, were entirely regular and valid, and vested in the said Keichline, as trustee for creditors, a title to the premises in question clearly discharged and freed from all equity and benefit of redemption. He further finds that there was not enough realized from the sheriff's sale to pay the secured creditors, and that hence there was no overplus in which the mortgagor was or in anywise could be interested. He further finds that the amount realized from the sheriff's sale and from the subsequent dealings with the realty, was duly applied by Keichline in the interest and for the use of the several secured creditors whose trustee he was, and that those creditors acquiesced in his acts and accepted the dividends awarded to them by the Court of Common Pleas of Northumberland county out of the fund raised from the mortgaged land; that such acceptance of dividends would estop any of the persons who received the same from denying the jurisdiction of the court under whose decree they received them; that, in

point of fact, none of the creditors has ever complained or now complains of Keichline's acts, nor does the petition aver that any of said creditors has ever made such a complaint, but, on the contrary, all of said creditors have approved and ratified the said Keichline's acts.

The auditor is of the opinion that under the circumstances the petitioners have no standing to demand an accounting from the said Keichline. . . . . .

No evidence was submitted to your auditor that from 1861 to the present time either the assignees or the administrator ever complained that Keichline had any funds in his hands belonging to them or either of them. The auditor, however, does not base his final conclusion on the staleness of the claim, or on the validity of Keichline's accounting in the Common Pleas of Northumberland county. He is of opinion: 1. That in January, 1867, there was a sheriff's deed, duly acknowledged in open court to Keichline, the respondent, and that on the day of said acknowledgment, for the reasons hereinabove given, the mortgagor's interest in the matter ceased. 2. That the petitioner has no standing in this court to ask for an account from Keichline. 3. That the respondent, Keichline, has filed his account in this court; that it has been vouched before your auditor, and that he has proved payments to proper parties of all the funds that came into his hands; and that if it should be held that the respondent is bound to account to the petitioners, he has sufficiently accounted in this proceeding.

—The auditor therefore recommended that the petition in the cause be dismissed at the cost of the petitioners.

Various exceptions were filed to the auditor's report by the petitioners, and, after argument thereof before the court in banc, they were dismissed, without opinion filed, the auditor's report confirmed and a decree entered as recommended. Thereupon, the petitioners took this appeal, specifying the dismissal of their exceptions, etc., for error.

*Mr. M. Hampton Todd*, for the appellants.

Counsel cited: Section 15, act of June 14, 1836, P. L. 632; Johnson's App., 103 Pa. 373; Shindel's App., 57 Pa. 43; Drysdale's App., 14 Pa. 531; Holman's App., 24 Pa. 174; Bentley's App., 99 Pa. 504; § 30, act of June 14, 1836, P. L. 635.

Opinion of the Court.

*Mr. Amos Briggs*, for the appellee.

That the conveyance of November 1, 1857, was but a mortgage, counsel cited: Myers's App., 42 Pa. 518; Sweetzer's App., 71 Pa. 264; Danzeisen's App., 73 Pa. 65; McClurkan v. Thompson, 69 Pa. 305; Pearce v. Wilson, 111 Pa. 14; Mellon v. Lemmon, 111 Pa. 56. That the scire facias was sufficiently served on the administrator: McLaughlin v. Ihmsen, 85 Pa. 364; Taylor v. Young, 71 Pa. 81; Tryon v. Munson, 77 Pa. 250. That the judgment of the Northumberland county court could not be impeached collaterally: Williamson's Case, 26 Pa. 20; Doyle v. Commonwealth, 107 Pa. 20; Wetherill v. Stillman, 65 Pa. 105; Marsteller v. Marsteller, 132 Pa. 517.

OPINION, MR. JUSTICE MITCHELL:

Though called a petition, this is, in substance, a bill for an account and re-conveyance, and the reference in general terms to an auditor made him, in effect, a master, with all the duties and powers usually appertaining to that position. The learned auditor, therefore, was clearly right in defining the scope of his office.

The facts are distinctly found, and are not substantially in dispute. The deed of November 1, 1857, from Helfenstein to Keichline, conveyed certain real estate in Northumberland county, " to hold and retain the said property . . . . . as a security, and keep the same for the space of one year after the following notes become due, for the purpose of securing and making safe to creditors the following sums," then naming the creditors, the amounts, and the times of payment, and concluding, " after the above-mentioned notes or obligations are paid, . . . . . to re-convey " to Helfenstein. The purpose of this deed is entirely clear. It is to save the grantor's property from immediate sacrifice, by the provision that the grantee shall hold it for a year after the notes should come due, and, subject to that restriction, to secure the creditors, if the specified notes were not otherwise paid. This necessarily implied Keichline's power to get the money out of the property; for, otherwise, the deed was not only worthless for its main purpose, the securing of payment to the creditors, but would be fraudulent, as withdrawing the property from their reach. The clause as to re-conveyance was no more than the expres-

Opinion of the Court.

sion of what the law implies in all cases of mortgagees, trustees, assignees for the benefit of creditors, or holders of securities of any kind, to wit, the duty to restore the property, or the balance of its proceeds, to the owner, after all the purposes of the trust are accomplished.

The purpose and operation of the deed being thus clear, it is not of much consequence by what name it should be called, but that it was in substance a mortgage, and to be treated as such in regard to proceedings upon it, are so well shown by the learned auditor that we refer to his report upon this branch of the case without further discussion. Treating it as a mortgage, Keichline, after the appointed time, proceeded to judgment and execution upon it, and at the sale bought in the property, held it for several years, sold it to Patton, had the sale approved by the court, and then filed an account in the Common Pleas of Northumberland county, and distributed the proceeds in his hands under its decree. The auditor finds that these proceedings were regular, that they divested the equity of redemption, that there was no surplus in which Helfenstein or his representatives could be interested, and that petitioners, therefore, have no standing to demand an account. In this we entirely concur.

It is objected that the account should have been filed in Philadelphia; and Johnson's App., 103 Pa. 373, is cited in this connection. This case, however, is so well distinguished on its facts by the learned auditor that the appellants disclaim in their argument any intention " to attack or question anything that appears on the face of the account," and limit their contention to the fact that the account does not include rents or profits of the property from 1862 to 1868, while it was in the possession of the accountant, and their right to an account now for such rents. The position is ingenious, and has been supported by a very able and forcible argument from the learned counsel of appellants, but we do not think it can be sustained. The account was an account by Keichline *of his trust;* it is stated as his first and final account as trustee, and was filed in a court of general jurisdiction of such subject-matters. There was no inherent want of jurisdiction, but only a possible objection in the particular case, depending on the fact of the accountant's residence at the commencement of the trust.

No such objection was made ; and as, if it had been made, and the fact decided by the court in its own favor, the jurisdiction would have been beyond all question, the decree cannot now be held void as coram non judice.   On the contrary, it is regular on its face, is upon a subject-matter over which the court had general jurisdiction, and is therefore conclusive in all collateral proceedings, not only as to all matters that actually were raised, but all that were legally included, and therefore might have been raised under it.   The present question of surcharge for rents was clearly one of these matters.   The auditor has found that the fund sufficed only to pay the creditors 65 per cent of the face of their claims.   If, therefore, they could surcharge the accountant with the rents now claimed to have been collectible by him, it was plainly their interest to do so.   But, more than this ; behind these creditors stood Helfenstein's assignees for the benefit of his creditors in general, to whom the equity of redemption belonged at the time of the sale, to whom any balance of the fund would come after payment of the secured creditors, and whose duty and interest it therefore was to see that Keichline accounted in full for every dollar that he either did make, or ought to have made, out of the property, in the performance of his trust.   The master has found that there is no evidence that he did collect any such rents ; and the fact that two parties to the proceeding, creditors and assignees, did not undertake to show that he ought to have collected any, raises a strong presumption that there was no sufficient ground for such a surcharge.   But, whatever the evidence, then was the time to make the surcharge ; and, not having been made then, it is now concluded by the decree.

There is another view of the case which is also conclusive against appellants on the merits.   It is plain that they have lost nothing.   Suppose they had been present, and had succeeded in surcharging Keichline with the rents they now claim ought to have been collected ; no part of the fund even thus increased would possibly have come to them.   The total rents, as set out in appellant's Schedule B, amount to $2,877, or, with interest to filing of account, in round numbers, $3,550, which added to the net fund for distribution as stated by the accountant would make $7,165.   The claims of the mortgage creditors amounted to $5,358, with interest, so far as the evidence shows,

for an average period of about eight years and a half, which would bring the amount up to about $8,000, or more than enough to take the whole fund, with the surcharge included; and, as already noted, if on closer calculation there had appeared any surplus, it would have gone, not to appellants, but first to the assignees for the benefit of creditors, and secondly to the administrator of Edward Helfenstein, whose estate was insolvent. If, therefore, as already said, the appellants had been present, and had succeeded in establishing everything that they now claim, it is beyond question that nothing possibly could have come to them from this property, and they have no standing now to demand an account.

Decree affirmed.