## Krusch v. Krusch.

*Divorce—Setting aside decree for fraud on jurisdiction of court.*

1. Where respondent had been duly served with the subpœna and libel Dec. 16, 1919, and had received notice of the meetings before the master, a petition filed by him April 16, 1923, after libellant's remarriage and death, to open the decree on the ground of fraud on the jurisdiction of the court, in that libellant, at the time of filing the libel, had been a resident of Delaware County and not of Philadelphia, as alleged in the libel, was dismissed on the ground that the decree was *res adjudicata* on the question of jurisdiction and he was barred by his laches from maintaining the petition.

2. The statutory requirement that the libel must be filed in the libellant's county of residence is one of *venue* only, which must be taken advantage of before decree and is not a matter of jurisdiction.

3. Where the respondent has been served personally with process, has received notice of the time and place of the meetings before the master and the entry of the rule for the final decree, and the fraud does not go to the primary jurisdiction of the court, requiring a residence of one year in the State, but only to the residence of the libellant in the county where the libel was filed, the court, on its own motion, will not set the decree aside.

Exceptions to report of special master. C. P. No. 1, Phila. Co., Sept. T., 1919, No. 93, in Divorce.

*Owen J. Roberts*, for libellant; *Walter Biddle Saul*, for respondent.

TAULANE, J., Aug. 13, 1925.—This matter comes before the court on exceptions to the report of the special master recommending that the decree of divorce heretofore entered should be vacated for want of jurisdiction.

The facts are rather simple. Ada Krusch, on Aug. 6, 1919, filed a libel in divorce against August Krusch, her husband, alleging, among other things, that she was a resident of the City of Philadelphia, and charged her husband with cruel and barbarous treatment and desertion.

A subpœna and *alias* subpœna in divorce was issued and both returned *n. e. i.*; a *pluries* subpœna was issued on Dec. 16, 1919, and on the same day was served with a copy of the libel by the sheriff on the respondent. The respondent did not enter an appearance or file an answer, and in due course a master was appointed.

The master gave the respondent notice, by mail, of the time and place of the meeting to take testimony, and it is admitted the respondent received the notice. He did not appear at the meeting and was not represented by counsel. The master filed his report, wherein he found that the libellant had been a citizen and resident of this State for more than a year prior to the filing of the libel; that at the time she filed the libel she was a resident of the City of Philadelphia; that the respondent was guilty of desertion, and recommended that a decree of divorce be granted.

The master's report was approved by the court. A copy of the final rule for divorce was mailed to the respondent, which he admits he received. The final decree was entered on July 8, 1920.

The libellant subsequently married Gordon B. Sherwood on Nov. 4, 1921, with whom she cohabited as his wife until her death on Sept. 27, 1922. She left a will, dated July 17, 1918, bequeathing her estate to her mother, and letters of administration *c. t. a.* were granted to the Franklin Trust Company.

The respondent, on April 16, 1923, filed a petition, alleging that his wife was a resident of Delaware County at the time she filed her libel; that she falsely stated in her libel, and falsely testified before the master, that she was a resident of Philadelphia; that he had just discovered these facts; that her false testimony as to her residence was a fraud on the court; that the court

was without jurisdiction to enter the decree; that he was still the husband of the libellant; that the decree was a cloud on his interest in his wife's estate, and prayed that the decree of divorce be vacated.

Answers were filed by Gordon B. Sherwood, the surviving husband, and the Franklin Trust Company, the administrator. The court, being in doubt as to the rights of the parties, referred the matter to a special master to take testimony and report his findings and conclusions. The special master has filed his report, wherein he reports the following conclusions and recommendations:

### "Conclusion.

"1. On Aug. 6, 1919, Ada Krusch did not have her residence at 2146 North Twelfth Street, Philadelphia, as alleged in her libel and testified by her in the present case.

"2. Ada Krusch did not live or have her residence in Philadelphia County on Aug. 6, 1919, the date of the filing of the libel in the present case.

"3. Therefore, the court did not have jurisdiction of the cause of divorce in this case.

"4. The decree of divorce entered by the court on July 8, 1920, is, accordingly, not a valid judgment.

### "Recommendation.

"The master, therefore, recommends to your honorable court that the rule allowed in the present case be made absolute and your honorable court order and decree that said decree entered by the court on July 8, 1920, divorcing said Ada Krusch from the bonds of matrimony between her and the said August Krusch be opened, revoked, set aside and stricken from the record."

Exceptions to the special master's report have been filed by Gordon B. Sherwood, the surviving husband.

The facts of this case raise three questions, viz.:

1. Has August Krusch, the respondent, a standing to contest the decree?

2. Was the court without jurisdiction?

3. Was the false statement of the libellant as to her residence such fraud on the court as to compel the court on its own motion to set aside the decree?

### 1. Has the respondent a standing to contest the decree?

The respondent was personally served with a copy of the libel, wherein the libellant alleged that she resided at No. 2146 North Twelfth Street, in the City of Philadelphia. He was in Philadelphia trying to locate his wife at the time he was served with a copy of the subpœna and libel, and has testified he was unsuccessful in locating her. The libel gave him an address in Philadelphia where his wife claimed to reside, as well as the name and address of her attorney. He made no inquiry either of his wife's attorney or at her alleged residence in Philadelphia. When the subpœna and libel were served on him, he returned to New York and apparently took no further interest in the divorce proceedings. He made no inquiries when he received notice from the master or when he received notice of the final rule in divorce. With little effort he could have ascertained the residence of his wife. Had he appeared before the master he would have learned of the residence claimed by his wife, and could have shown that her residence was in Delaware County. At the time he had no interest in the proceedings. He did nothing and the divorce was obtained without contest. It may be that the respondent did not know the actual residence of his wife until he filed his petition; it was his duty, nevertheless, to act promptly if he desired to raise any question as to her residence. He cannot remain silent for more than two years and then, at the

instance of other persons and after the remarriage and death of his wife, raise the question of her residence for no other apparent reason than to change the devolution of her estate. The respondent says he makes no claim to his wife's estate. Section 5 of the Intestate Act of June 7, 1917, P. L. 429, would seem to preclude him from claiming any share in her estate.

As the respondent was personally served with process and duly notified of the various steps in the proceedings, we are of opinion that he has no standing to contest the decree. The decree is *res judicata*, both on the question of jurisdiction and the merits: Crane v. Deacon, 253 S. W. Repr. (Mo.) 1068; Helfenstein's Estate, 135 Pa. 293, and Field v. Field, 67 Pa. Superior Ct. 355. Moreover, he is barred by his laches. The learned special master demonstrates very convincingly that the respondent's case has no merit. He says:

"With legal notice and full knowledge of the pending proceedings against him, the petitioner made no defence, and with due information of the entry of the decree, he stood by for practically three years without complaint against it and without bringing to the attention of the court the irregularities now alleged as cause for its vacation. During all this time, apparently, he was content to accept the judgment of the court, and was not impelled by any sense of injury to his rights to move for its vacation, and he continued in this attitude until, upon the death of the libellant, the distribution of her estate gave him his first concern about the validity of the decree. Even then, he required the suggestion of other claimants to the estate to lead him to make his present protest against the legality of the court's decree and to move for its vacation, thereby lending to his application the appearance of having been made in agreement with, and for the benefit of, the other claimants. In addition to his long delay, his failure to aver in his petition the existence of any defence on his part against the cause of divorce is significant evidence that he sustained no wrong upon the merits and that his motion for vacation of the decree had other reasons. Also, there is little, if any, interest in petitioner to sustain an application for vacation of the decree. The interest, as designated in the petition, was in the estate of Ada Krusch, but in his testimony he said that he had and made no claim to any part or share in this estate. In his testimony he stated that his personal interest in moving the vacation of the decree was to clear his name of the charges of cruel and barbarous treatment averred against him in the libel of Ada Krusch; but interest in this respect is made of negative value by the fact that the cause of divorce for which the decree was entered was desertion and not cruel and barbarous treatment.

"It is clear, therefore, that if the petition here were based upon facts offered in extenuation or excuse by the petitioner for his default in making defence and the vacation were moved in his relief in this respect, the petitioner would have no standing before the court entitling him to intervention in his behalf in exercise of its discretionary power; any of above reasons would be sufficient to deny him right to this extraordinary equitable relief. He would be barred by his laches, and in the absence of any offer of defence upon the merits or showing of injury suffered to his rights or of particular interest remaining to him, no cause would appear personal to him to extend him any relief."

### 2. Had the court jurisdiction?

The special master has found, though with some misgiving, that the libellant was not a resident of Philadelphia when she filed her libel, and we are not disposed to question his finding. She had lived for a number of years in Philadelphia, until April, 1919, when she purchased a house and moved to Delaware County. She resided in Delaware County until November, 1919,

when she again removed to Philadelphia and resided there until the following April.

Section 2 of the Act of March 13, 1815, 6 Sm. Laws, 286, 287; 1 Purd. Dig. 1233, par. 3, provides: "If any person hath been or shall be injured as aforesaid, the husband in his own person, or the wife by her next friend, may exhibit his or her petition or libel to the judges of the Court of Common Pleas of the proper county where the injured party resides in term-time, or to one of the judges of the same court in the vacation, at least thirty days before the next term, setting forth particularly and specially the causes of his or her complaint, and shall, together with such petition or libel, also exhibit an affidavit, &c."

Had it appeared in the proceeding that the libellant was not a resident of Philadelphia at the time she filed her libel, the divorce would have been refused: Sherwood's Appeal, 17 W. N. C. 338, and Mauser v. Mauser, 59 Pa. Superior Ct. 275.

As the divorce has been granted, the question now is whether the court had jurisdiction. The Courts of Common Pleas have general jurisdiction in divorce. The requirement that the libel shall be filed in the county of residence of the libellant is one of venue only, which must be taken advantage of before decree and is not a matter of jurisdiction.

In Nagle v. Nagle, 3 Grant, 155, it was held that the respondent in a divorce case could not file a plea to the venue after the case was at issue and had been on the list for trial several times. Lewis, C. J., said: "What is this but a trial of a local suit in the wrong county? Conceding for the argument, but without deciding the point, that the wife ought to have filed her libel for divorce in the county where her husband resides, the right of the husband to a trial in that county was a personal convenience which he might waive. The objection touches his privileges rather than the jurisdiction of the court, for the latter extends over the subject-matter of divorces. In this case the service of the subpoena was accepted by the husband without objection, and an answer was filed denying the allegations of the libel and praying that it may be dismissed with costs for that reason. A replication to his answer was also accepted and issue joined upon it by the husband. In this condition the cause was continued for more than two years. When the court was about to proceed to the trial, the answer was withdrawn and a plea to the jurisdiction was filed. The plea is not in the paper-book, and it is alleged that it has been lost. We have, therefore, no means of knowing what facts were set forth in it. If it contained nothing but an allegation that the parties resided in Berks County at the time of the injury and that the libellant has ever since resided in Schuylkill County, it was properly overruled. After delaying her for so long a period of time and putting her to the trouble of preparing her cause for trial in Schuylkill County, it would have been grossly unjust to turn her out of court on such an objection."

In English v. English, 19 Pa. Superior Ct. 586, 596, Rice, P. J., said:

"It is objected, in the first place, that the court had not jurisdiction to hear and determine the cause, because the libellant was not a citizen of the State who had resided therein for one whole year previous to the filing of the libel. This was true, in part at least, on the date of the filing of the original libel; and consent of a party, as expressed by his appearance, cannot in divorce create a jurisdiction over the subject-matter which the court would not otherwise have. No matter how expressed, consent of the parties, even with the consent of the court added, cannot give the court jurisdiction of a libel in divorce based on the allegations of cruel and barbarous treatment or of

indignities to the person, unless the libellant shall have resided in the State at least one whole year previous to the filing of his or her petition or libel: Act of March 13, 1815, § 11, 6 Sm. Laws, 286. This prerequisite is not in the nature of a personal privilege or safeguard which the respondent may waive or the court, in its discretion, dispense with. . . .

"On the other hand, where the respondent had accepted service of the subpœna and had filed an answer denying the allegations of the libel and a replication had been filed and the cause was about to be called for trial, it was held too late to withdraw the answer and to plead that the libel was not filed in the county where the respondent resided. Lewis, C. J., said: 'What is this but a trial of a local suit in the wrong county? Conceding for the argument, but without deciding the point, that the wife ought to have filed her libel for divorce in the county where her husband resides, the right of the husband to a trial in that county was a personal convenience which he might waive. The objection touches his privileges rather than the jurisdiction of the court, for the latter extends over the subject-matter for divorces.' "

In Com. v. Barnett, 199 Pa. 161, a writ of mandamus was issued against a State officer in Centre County, notwithstanding the Act of June 8, 1893, P. L. 345, directing such writs to be issued in the Court of Common Pleas of Dauphin County. It was held that the Act of 1893 simply regulated the venue; that it did not go to the jurisdiction of the court, and that the defendant's failure to raise the question of venue amounted to a waiver. Mitchell, C. J., said, on page 177: "The objection made is that a Court of Common Pleas has no power to issue a writ of mandamus to a State officer. Objections to jurisdiction are of two classes, between which there is a clear and well settled distinction: first, those relating to the authority of the court over the subject-matter; and, secondly, those relating to its auhority over parties. Objections of the first class cannot be waived nor jurisdiction obtained by acquiescence. Thus, if the writ of mandamus had issued from the Quarter Sessions or the Orphans' Court, the proceedings would be void ab initio for defect of authority in the court to issue such process and determine such controversies. It is of this class that it is commonly said that consent cannot give jurisdiction. But in the second class the rule is different. The party exempt from jurisdiction may waive his personal privilege, and if he does so the jurisdiction of the court is complete. Thus, if a defendant is not duly served with process or is a non-resident beyond the reach of process, or if served while temporarily exempt as a juror, or party, or witness, or member of the legislature, the proceeding as to him will be void or voidable on showing the facts. But if he waives his exemption and appears voluntarily, the jurisdiction of the court over him is thereafter beyond question. . . . We are of the opinion that the objection now made relates, not to the authority of the court over the subject-matter, but only to the privilege, personal or official, of the defendant."

In Brown v. Brown, 1 D. & C. 173, and Ganster v. Ganster, 5 D. & C. 503, Judge Landis, of Lancaster County, on the authority of Nagle v. Nagle, 3 Grant, 155, refused to set aside a decree in divorce on the ground that the libel had not been filed in the county of the residence of the libellant, where the respondent had been served with process and entered an appearance. The learned judge held that the question of the libellant's residence in the county was a matter of venue and not jurisdiction.

In Field v. Field, 67 Pa. Superior Ct. 355, the libellant filed a libel for divorce in Fayette County. The subpœna was served on the respondent; he entered an appearance and took no further action in the case. A divorce was granted. Five years later the respondent filed a petition to set aside the

decree because the libellant had falsely stated she resided in Fayette County, when, in fact, she resided elsewhere, and that the divorce was the result of collusion between him and the libellant. The court refused to set aside the decree. Williams, J., said: "The court had jurisdiction under the evidence and the pleadings. The libel alleged and the master found from the testimony that the libellant was a resident of Fayette County, which finding was confirmed by the trial court. To hold that the action of the court was reversible because petitioner alleged a different state of facts would be to hold that he had an absolute right to a rehearing on the merits. He had no such right."

The inconveniences, if not dangers, of any other conclusion are strongly stated in Johnson v. Johnson, 12 Bush (Ky.), 485, as follows: "A contrary construction would leave every judgment granting a divorce open to collateral attack wherever and whenever it might be called in question. If the jurisdiction in such case is to depend on the residence of either party on the day the suit is brought, then, without the required residence, the judgment is void and would be liable to be questioned in every case in which it might be offered in evidence, and its validity would depend upon the evidence of the residence of the husband or wife on a particular day. The residence, especially of the wife, might be difficult to prove; the proof might be conflicting, and it might happen in one case in which the validity of a judgment was called in question it would be sustained, and in another, held invalid, thus subjecting those interested to the most perplexing and embarrassing anxiety and uncertainty."

We have no doubt that the court had jurisdiction, and are unable to concur in the opinion of the learned special master, who, no doubt, reached his conclusion with much reductance. He says: "But, despite the conditions disinclining the master to a vacation of the decree in this case and with allowance for any alleviation of turpitude in misstatement of residence by the libellant, the technical requirement of residence remains, under the decisions, an imperative condition of jurisdiction of the court, and believing, as before stated, that such residence did not exist in the present case, the master is impelled to the opinion that, for these technical reasons, the decree entered by the court is not a valid one."

*3. Should the court on its own motion set aside the decree because of a fraud on the court's jurisdiction?*

In considering this point, it should be borne in mind that the respondent had been personally served with process; had received notice of the time and place of the meetings before the master and the entry of the rule for the final decree. The fraud was not on the primary jurisdiction of the court requiring a residence of one year in the State, but only as to the residence of the libellant in the county at the time she filed her libel.

The case of McEvoy v. Quaker City Cab Co., 267 Pa. 527, conclusively settles the law in Pennsylvania that intrinsic fraud in obtaining a decree is no ground for setting it aside. The reason of the rule is very clearly stated in 3 Freeman on Judgments (5th ed.), 2582, par. 1241, as follows: "The procuring of a judgment by perjury or subornation of perjury is doubtless a fraud, and such a fraud as would induce equity to grant relief, were it not for the fact that its existence can rarely or never be ascertained otherwise than by trying anew an issue already tried in the former action. Whenever an issue exists in any action or proceeding, each of the parties should anticipate that his adversary will offer evidence to support his side of it and should be prepared to meet such evidence with counter-proofs. Where he has an opportunity to do this and does not avail himself of it, or, though availing himself of it, is unable to overcome the effect upon the court or jury of the evidence

offered by his adversary, he cannot, in effect, obtain a retrial of the issue before another tribunal by charging that the judgment against him was procured by perjury, forgery or false testimony. It is undoubtedly the general rule supported by the weight of authority that mere perjury or false swearing alone is not ground for equitable relief, since it is regarded as an intrinsic fraud."

The fraud of the libellant was intrinsic and not collateral, and is within the rule laid down in McEvoy v. Quaker City Cab Co., 267 Pa. 527. To render the decree the court was obliged to find as a fact that the libellant was a resident of Philadelphia at the time she filed her libel. The master received testimony as to this fact and found that the libellant resided in Philadelphia; the court in approving the master's report adopted this finding. The libellant's residence at the time she filed her libel was just as much an issue in the case as the fact of marriage or desertion. The respondent had every opportunity to contest the divorce, both as to residence and desertion. He did nothing. He can now no more controvert the place of residence of the libellant than he can deny the desertion. The decree is *res judicata* on all issues in the case.

Thus, in Crane v. Deacon, 253 S. W. Repr. (Mo.) 1068, where a respondent, who had been served with process, filed a petition to set aside a decree of divorce on the ground that the libellant had falsely averred the place of her residence to confer a pretended jurisdiction upon the court, it was held that the fraud was intrinsic, and the court had no jurisdiction to set aside the decree. The court said: "It is urged by the plaintiff that the court which rendered the decree of divorce had no jurisdiction of the parties nor of the subject-matter of the action, because such jurisdiction was limited to the county in which the plaintiff resided; that the allegations of the petition and the statutory affidavit in support of it as to residence stated jurisdictional facts which must be established before a court could proceed to try the issues. It is further urged, this being a direct attack upon the judgment, that the want of jurisdiction may be shown by parol evidence. . . . The general rule in relation to the impeachment of judgments for fraud is that relief is limited to fraud in the procurement of the judgment. It must be extrinsic to the merits of the case— collateral to the issues joined. Many of the cases hold that it must be such fraud as prevents the other party from making a defence. . . . A judgment cannot be impeached for fraud where the fraud consists of perjury, forged documents or false proof of any fact in issue to which the other party has an opportunity to make a defence. . . . We may concede the plaintiff's claim that in a divorce suit the petition must state the facts regarding residence, and the plaintiff must swear to them in order to give the court jurisdiction. These alleged facts are in issue the same as any other facts alleged in the petition, it is a complete defence to show such allegations are not true. It is not alleged here that the defendant filed an answer in the divorce case, but it is alleged that he employed an attorney to file an answer and that he appeared in court on the day of the trial. He had every opportunity to require strict proof of those allegations, so that the trial court must have considered and determined the facts in relation to the jurisdiction just as it passed upon other facts in issue. We cannot presume that the trial court failed of its duty in that respect; it could not have granted a decree of divorce unless the plaintiff had made out a case which involved the proof that she was a resident of St. Louis County. The finding of such facts is *res adjudicata*, unless there is a difference between the finding of jurisdictional facts and any other facts necessary to make out a case. The rule, to which we can find no excep-

tion, is that, where it is necessary for a court to find certain facts *in pais* which give it jurisdiction, the finding of such facts is *res adjudicata* between the parties, the same as any other facts constituting a cause of action. The courts of this state, in a collateral attack upon a judgment, have made no difference between the facts which confer jurisdiction and any other facts to be determined in a case. Likewise, there is no difference in a direct attack upon a judgment between jurisdictional facts and other facts necessary to be proven in support of the cause of action. . . . The alleged facts as to jurisdiction were in issue in the divorce case involved here. The defendant was served with a copy of the petition; he appeared in court when the case was tried; he employed an attorney to represent him; the facts were adjudicated by the court as conclusively as any other facts in any case where issue is joined and determined by the court."

To the same effect is Reeves *v.* Reeves, 123 N. W. Repr. (S. D.) 869.

In Helfenstein's Estate, 135 Pa. 293, an attempt was made to set aside a decree confirming a trustee's account because the account had not been filed in the proper county, as required by section 15 of the Act of June 14, 1836, P. L. 628, 632. It was held that the court's finding that it had jurisdiction could not be attacked collaterally. Mitchell, J., said: "The account was an account of Keichline of his trust; it is stated as his first and final account as trustee and was filed in a court of general jurisdiction of such subject-matters. There was no inherent want of jurisdiction, but only a possible objection in the particular case, depending on the fact of the accountant's residence at the commencement of the trust. No such objection was made; and as, if it had been made and the fact decided by the court in its own favor, the jurisdiction would have been beyond all question, the decree cannot now be held void as *coram non judice*. On the contrary, it is regular on its face, is upon a subject-matter over which the court had general jurisdiction, and is, therefore, conclusive in all collateral proceedings, not only as to all matters that actually were raised, but all that were legally included, and, therefore, might have been raised under it."

The learned special master felt obliged to recommend, notwithstanding the respondent has no standing, that the court should, on its own motion, set aside the decree where, in the language of the Supreme Court in McEvoy *v.* Quaker City Cab Co., 267 Pa. 527, "the jurisdiction of the court has been imposed upon."

The respondent has cited no case, and the court, after a most exhaustive investigation, has found none which decides that a decree can be set aside for a fraud on the court's jurisdiction where the respondent was served with process and had full opportunity in the proceeding to deny the facts alleged to be false. We are satisfied that there is no principle of law which justifies such a conclusion. Crane *v.* Deacon, 253 S. W. Repr. (Mo.) 1068, and Field *v.* Field, 67 Pa. Superior Ct. 355, are clear authorities to the contrary.

In refusing to set aside decrees alleged to have been procured by fraud, the courts are guided by policy and not morals.

"A contention," says the court in Zeitlin *v.* Zeitlin, 202 Mass. 205, 207, "that the prevailing party knowingly gave or procured false testimony upon an issue involved might be made and strongly supported in a great many cases. It is against public policy to open cases on no other ground than this."

A fraud on the jurisdiction of the court means no more than depriving a party of his right to be heard by deceiving the court into taking jurisdiction in his absence and without notice. The rule is thus stated in Holbrook *v.* Holbrook, 114 Mass. 568: "A decree of divorce will not be vacated or set aside by

the court after the term at which it was entered without clear proof that the libelee was prevented by fraud of the libellant or imposition upon the court from being heard in the original suit upon some matter which, if then proved, would have constituted a good defence."

All the cases cited by the respondent (Gambe *v.* Gambe, 22 Pa. C. C. Reps. 23; Boyd's Appeal, 38 Pa. 241; Rogers *v.* Rogers, 21 Dist. R. 569; Rottger *v.* Rottger, 50 Pa. C. C. Reps. 13; Wanamaker *v.* Wanamaker, 10 Phila. 466; Nickerson *v.* Nickerson, 13 W. N. C. 210; Fleming *v.* Fleming, 83 Pa. Superior Ct. 554, and Walton *v.* Walton, 5 D. & C. 1, affirmed by the Superior Court on Feb. 27, 1925, 84 Pa. Superior Ct. 366) are instances where the respondent had a decree entered against him without notice and in his absence, due to the fraud of the libellant.

Thus, in Fleming *v.* Fleming, 83 Pa. Superior Ct. 554, a decree in divorce was set aside which had been obtained against a wife without notice to her because her husband suppressed her whereabouts when he was at the time in communication with her. Keller, J., said: "The rule that a judgment or decree will not be set aside for intrinsic fraud or false swearing on the trial or hearing does not apply when, as here, the other party had no knowledge of the suit and was not represented by counsel, and there has, therefore, never been a real contest in the hearing of the case."

No ground has been shown which would justify the court in setting aside the decree for the alleged fraud on its jurisdiction.

While a public interest is involved in every divorce case, there is little of such interest in this case, because the contest in reality is over property and not the reinstatement of the marital relation: McElrath *c.* McElrath, 120 Minn. 380.

We find nothing in Simpson's Estate, 253 Pa. 217, which in any way conflicts with our conclusion. In the Simpson case the auditor found as a fact that the original trustees at the time of the commencement of the trust were residents of Pittsburgh; hence, the Courts of Common Pleas of Philadelphia County, as the Supreme Court held, had no jurisdiction of the trust: Act of June 14, 1836, § 15, P. L. 628, 632. Brown, C. J., said: "The learned court below was of opinion that 'if the original trustees had lived outside of the County of Philadelphia when the trust became operative, our jurisdiction would not have extended to this case;' but the court overlooked the fact found by the auditor, neither excepted to nor assigned as error, that McHenry and Owens, who had resigned as trustees, were residents of the City of Pittsburgh. This conclusive finding gave to the Court of Common Pleas of Allegheny County exclusive jurisdiction of the trust now under consideration."

No attempt was made in Simpson's Estate to collaterally attack a final decree of distribution for want of jurisdiction. The question of jurisdiction was raised while the trust was still in existence and before final distribution.

On this ground alone, Simpson's Estate is readily distinguishable from the case at bar.

The Supreme Court in Simpson's Estate did not intend to overrule or question the well settled rule that a judgment cannot be attacked collaterally for want of jurisdiction where the court entering the judgment has found the jurisdictional facts in favor of its jurisdiction.

Exceptions 1, 2, 3, 4, 5, 6 and 7 are dismissed and exceptions 8, 9 and 10 are sustained.

The petition of respondent to set aside the decree in divorce is dismissed.