## Martorana et al., Execs., v. James et al., Execs.

*Frederick J. Templeton,* for plaintiffs.
*Russel B. Updegraff,* for defendants.

SHUGHART, P. J., September 24, 1952.—The matter before the court is the consideration of preliminary objections filed in behalf of defendants to plaintiffs' bill in equity. A proper understanding of the case requires a narrative of the events leading up to the institution of this action.

On April 17, 1936, Hazel Updegrove and Leona E. Martorana, who were sisters, were the owners of a certain property known as 336 Bridge Street, New Cumberland, Pa. On that date the sisters joined in a conveyance of that property, as well as other real estate they owned, to Caleb S. Brinton, Esq., and John D. Faller, Esq., in trust. The deed of trust provided,

inter alia, for the management of the real estate therein conveyed and the payment of the net proceeds of the income, as well as any receipts from the purchase price of lands sold, to the Farmers Trust Company in liquidation of a mortgage. It was further provided that when the mortgage was paid in full the trust terminated and the real estate remaining in the hands of the trustee was to be reconveyed to the grantors, "their nominees, heirs and devisees".

The trustee, Brinton, died on April 24, 1942. On June 20, 1947, following some correspondence with Leona Martorana and her husband, Santi, the surviving trustee, Faller, conveyed the premises at 336 Bridge Street to Hazel Updegrove alone, and the deed was duly recorded.

On July 27, 1947, Leona Martorana died, testate, naming her husband, Santi Martorana, and James A. Ewing, Esq., as her executors. They are plaintiffs in the present action.

On February 6, 1949, John D. Faller, the surviving trustee, died, testate, and letters testamentary on his estate were issued to his widow, Helen S. Faller.

Thereafter, present plaintiffs filed a bill in equity in this court to March term, 1949, no. 2, to compel an accounting by the executrix of the surviving trustee. Complainants therein prayed that the court direct Helen S. Faller to "account for the sale of the properties sold under the terms of the trust and the disposition of the sale prices thereof"; that she "pay over to your petitioners the sums due them by way of distribution of the surplus . . ."; that she "*reconvey any property remaining unsold by the trustees*" and for "such other relief as the court may deem proper". (Italics supplied.)

The bill was filed on May 12, 1949, and on June 25, 1949, an answer to the bill was filed, which included an accounting, by the executrix of the surviving trus-

tee. In addition to accounting for receipts and expenditures for the duration of the trust, a statement was included. Among other things, this statement related that by deed dated June 20, 1947, the surviving trustee conveyed the property known as 336 Bridge Street to Hazel Updegrove, and by deed dated the same date conveyed nine lots of ground to Leona Martorana and Hazel Updegrove.

Notice of the filing of the answer and account was accepted by counsel for plaintiffs in the bill, and given to other parties interested in the proceedings. No exceptions were filed to the account and, on motion of counsel for defendant, accountant, an order was entered July 19, 1949, confirming the account and decreeing distribution in accordance "with the schedule of distribution heretofore filed as part of said account".

Hazel Updegrove died, testate, on July 5, 1950, at which time she was in possession of the premises in question. Letters testamentary were duly issued to defendants in the present action.

On July 12, 1951, the present bill in equity was brought by the executors of Leona Martorana against the executors of Hazel Updegrove. The bill prayed that a decree in partition be entered respecting the property at 336 Bridge Street, and in the event it cannot be partitioned, that commissioners or trustees be appointed to sell the property and to divide the proceeds equally between plaintiffs and defendants, that defendants account for certain monies received from a fire insurance company as a settlement for damages occasioned by a fire on the premises after the death of Hazel Updegrove; and for such other relief as may be suitable under the circumstances.

By stipulation of counsel it was agreed that the court consider as correct, for the purpose of disposing of the objections under consideration, the foregoing

facts relative to the prior action which were related in the brief of defendants.

The first objection of defendants, to the present bill, is that the matter is res adjudicata, the matter having been determined by the prior action entered to March term, 1949, no. 2, referred to above.

As a general rule, res adjudicata is an affirmative defense which cannot be raised preliminarily. In this case plaintiffs have made no objection to raising the defense in this manner, in fact have stipulated that the court shall take judicial notice of the prior action. Plaintiffs, therefore, inferentially agree that the court consider the defense preliminarily.

We shall, therefore, treat the defense as being properly raised by the preliminary objections to the bill.

Preliminarily it does appear that the relief sought in the present proceedings could have been obtained in the prior action brought against the personal representative of the surviving trustee. The present contention of plaintiffs that the trustee should not have conveyed the real estate in question to Hazel Updegrove alone, could have been raised in the prior proceedings by way of an exception to the account filed.

Therefore, the present proceedings constitute a collateral attack on the decree confirming the trustee's account and schedule of distribution, or, in substance, amounts to an effort to belatedly file exceptions to the account already confirmed.

This is especially true because in the prior action present plaintiffs not only demanded that the trustee file an account, but in addition, "reconvey any property remaining unsold" in the hands of the trustee. Since the property had already been conveyed to Hazel Updegrove by the trustee during his lifetime, the account was not a proper one if, in fact, as plaintiffs now claim, it should have been conveyed to both Hazel and her sister.

We have been cited no case, nor has our own research revealed any, where the exact question here presented was decided. Some cases, however, hold that matters which could have been raised by objection or exception to an account cannot be subsequently raised in another proceeding.

In Helfenstein Estate, 135 Pa. 293, the account of an assignee or trustee for the benefit of creditors was audited and confirmed in Northumberland County. Subsequently, the heirs of the assignors instituted a proceeding in Philadelphia County to compel the trustee to account for certain rents and profits received while he held certain real estate under the trust. In refusing to order a further accounting the court said, at page 299:

"The account was an account by Keichline *of his trust;* [italics in original] it is stated as his first and final account as trustee, and was filed in a court of general jurisdiction of such subject-matters . . . it is regular on its face, is upon a subject-matter over which the court had general jurisdiction, *and is therefore conclusive in all collateral proceedings, not only as to all matters that actually were raised, but all that were legally included, and therefore might have been raised under it.*" (Italics supplied.)

Although in the instant case the first proceeding was against the trustee, and the present one between the two persons who created the trust, there is no doubt that the present question could have been raised in the prior action by way of exceptions to the account. Even though it was not raised in the prior proceedings it was a matter that was "legally included and therefore might have been raised under it."

In Commonwealth, to use of Weaver et al., v. Steacy et al., 100 Pa. 613, at the audit of the account of an assignee for the benefit of creditors, a claim was presented in behalf of the administrator of one Pickel.

There was no defense to the claim, but the heirs of Pickel objected to payment being made to the administrator because he had left the State and was not in good financial standing. It was, therefore, amicably arranged to award the money to the heirs without having the money pass through the hands of the administrator. The report of the auditor providing for distribution to the heirs directly was confirmed by the court. The assignee failed to pay the shares awarded to the heirs of Pickel, who instituted an action against the sureties on the official bond of the assignee.

The sureties contended, and the lower court held, that the heirs were not creditors of the assignor at the time of the assignment (Pickel being then alive) and that because of the heirs' agreement to divert the fund from the administrator to whom it was properly payable, they released the sureties.

In reversing the court below, Justice Paxson, speaking for the court, said at page 616:

"The error of this ruling runs through each of the assignments referred to. The precise effect of it was to overturn, *in a collateral proceeding, the decree of distribution in the Common Pleas.* It needs but a moment's reflection to see that this cannot be allowed. . . . If the assignee, or his sureties, *were aggrieved in any way by the decree, they should have appealed. That was their appropriate remedy, and their only remedy.*" (Italics supplied.)

Ahl & Bro.'s Assigned Estate, 169 Pa. 609, arose in this county. In that case C. W. Ahl obtained certain property from P. A. Ahl under a trust agreement whereby he was to pay certain debts and turn the balance back to P. A. Ahl. Thereafter, P. A. Ahl and D. V. Ahl made an assignment for the benefit of creditors. The assignees brought an action against C. W. Ahl, for discovery and account of his trust,

which resulted in a final decree against the estate of C. W. Ahl for over $10,000.

When the assignees of P. A. Ahl and D. V. Ahl filed their account, the estate of C. W. Ahl made a claim based on the fact that C. W. Ahl had paid a claim of P. A. Ahl arising out of the trust agreement, but for which claim C. W. Ahl received no credit in the proceedings by the assignees against him for an accounting. The court refused the claim and said at page 612:

"It was not an independent demand which might be set off or defalked. *It was a part of the subject-matter of the accounting, and the decree in the equity proceeding is as conclusive in respect of this demand as it is in respect of any item of the plaintiff's claim, whether adjudicated or omitted by mistake.* (Italics supplied.)

In the orphans' court the "Confirmation of an account is conclusive not only as to matters that actually were raised, but all that were legally included, and therefore might have been raised under it: Helfenstein Estate, 135 Pa. 293: Elkin's Estate, 325 Pa. 373; Forsyth's Estate, 335 Pa. 281; Crozer Estate, 346 Pa. 446": Powers' Estate, 58 D. & C. 379, 384.

In Vassilakis v. Vassilakis, 371 Pa. 268, the executor of an estate filed an account listing assets of $1,116.67 and disbursements of $7,705.82. This account was audited and confirmed on September 6, 1946. On December 21, 1948, upon petition, a citation was awarded to pay a certain legacy claimed by petitioner. In sustaining preliminary objections to the petition the court held that there could be no order to pay a legacy unless there has previously been an accounting and an award thereof. The court further indicated that the proper manner to proceed was to require a review and an opening of the existing account. In short, the decree of confirmation could not

be collaterally attacked by a petition to pay a legacy not awarded in the account.

"It is a general principle of public policy, making for the general welfare, for the certainty of individual rights, and for the dignity and respect of judicial proceedings, that the doctrine of res adjudicata should be supported, maintained and applied in proper cases. Nor should its *application be restricted by technical* requirements, but a broad view should be taken of the subject, having always in mind the actual purpose to be attained. The *rule should not be defeated by minor differences of form, parties or allegations, when these are contrived only to obscure the real purpose,—a second trial on the same* cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided *in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights.* If this be the fact, then the matter ought not to be litigated again, *nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule.* This is a universal rule and is well stated . . . in State Hospital v. Con. Water Co., 267 Pa. 29, 37. The requirements for application of the rule are that there be an identity of parties and of subject-matter in the two actions. The first of these requirements being present, all issues that were actually adjudicated in the former action are concluded . . . and *if the whole cause of action in the second case is the same as in the first, not only the issues actually adjudicated* in the first proceeding, but also those which might have been raised and passed upon are concluded. *If, then, the issues in the present case could have entered into the determination of the first case, they should* have been presented; and if they were omitted for any cause, the judgment or decree entered

thereon is conclusive between the parties or their privies. [Citations omitted] . . .

"*A party cannot escape the bar of the judgment against him by bringing a new suit on the same cause of action, but in a different form of action or proceeding, unless the relief sought in the second action was not or could not have been* germane to the first proceeding": Hochman v. Mortgage Finance Corporation et al., 289 Pa. 260, 263, 265. (Italics supplied.)

Hazel Updegrove was not an actual party to the proceeding against the trustee to file an account, but there is no doubt that since she had notice of the account she was bound to raise any objections to the account that she had, by way of exceptions thereto. A fortiori present plaintiffs, who were the moving parties in forcing the accounting, could not stand by, bide their time and allow the account to be confirmed and then belatedly in this proceeding demand a remedy available to them in that proceeding.

The surviving trustee was an able and distinguished member of this bar. It is most unlikely that the conveyance of the property to Hazel Updegrove was made without some arrangement and agreement between the two sisters. In this case but two persons were involved in the distribution of the property remaining, and but one parcel of real estate involved. Had there been two or three properties conveyed to Hazel alone, could plaintiffs institute an action such as the instant one, respecting each parcel of land? Had there been several distributees and certain parcels been conveyed to each, could the various distributees institute actions against one another for partition and accounting of the various parcels?

A realization of the multiplicity of actions discloses the obvious answer to the questions posed. In each of the hypothetical situations, all questions could be resolved in the proceeding for an accounting. Simply

because in this case there are only two parties and one parcel of real estate involved affords no basis for a contrary conclusion.

The following statement of Justice, later Chief Justice, Kephart, in the Hochman case, supra, at page 265, is apposite here:

"We conclude, from our examination of the record, that there was an identity of subject-matter, cause of action, parties, and quality in the persons for or against whom the claim is made, in the two proceedings. . . . If the relief asked in the latter bill could have been obtained in the prior action it should have been asked, and, since the cause of action is the same, all matters which might have been litigated in the former proceeding are concluded."

Defendants also contend that the present bill be dismissed because the facts related disclose that plaintiffs have been guilty of laches.

" 'The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding: . . . The rule (that equity will not enforce a stale claim) is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render ascertainment of the exact facts impossible' ": [Citations omitted.] Wallace's Estate, 299 Pa. 333, 340.

By the stipulation filed, it is agreed by the parties that the delay until the death of Hazel Updegrove only shall be considered in determining whether plaintiffs are guilty of laches. The reason for this stipulation is,

that following Hazel's death, her personal representatives requested delay in instituting the action to determine if documents were available which would form a basis of amicable adjustment.

Thus restricted, the question for determination is, whether the delay by plaintiffs from the date that the trustee's account was confirmed on July 19, 1949, until Hazel's death on July 5, 1950, was sufficient to constitute laches.

It is stipulated that the executor Ewing was unaware of the interest of his testatrix until after the death of Hazel Updegrove. However, as a part of the record in this proceedings there is a letter from the executor Santi Martorana to the trustee Faller which, although it may go much further, at the very least indicates that Santi Martorana was aware of his wife's interest in the property before the transfer of title to Hazel Updegrove, which was also prior to the death of Mrs. Martorana. Generally, the presentation of a claim to one or more of several co-executors is a presentation to all and a notice given to one is notice to all: 21 Am. Jur. 802, §751. The knowledge of one might well be likewise imputed to the others.

It must be noted that the failure of the executor Santi Martorana to advise Ewing and to see that a claim was made during the lifetime of Hazel Updegrove would now operate to the advantage of the estate he represents, if the present action were to proceed. While Mrs. Updegrove lived, there was at least some one who knew of the transactions, resulting in the conveyance to her alone, besides Santi Martorana; with her death, all parties thereto, except Martorana, are gone.

The question might be asked, why did Santi Martorana remain silent and allow the account of the trustee to be confirmed? Why did he wait almost a full year after the account was confirmed and until

death sealed the lips of Hazel Updegrove before advising his coexecutor of the interest of his testatrix in the real estate? The answers to these questions, which would be developed at a trial, might disclose that there was laches. It is at least doubtful if plaintiffs can be found guilty of laches from the record before us. In view of the disposition of the first objection it is unnecessary, however, to decide this question.

And now, September 24, 1952, at 10:05 A. M., (Eastern Standard Time), for the reasons given in the foregoing opinion, the first objection to plaintiffs' bill of complaint is sustained, and the bill is dismissed unless plaintiffs shall, within 20 days after the entry of this order, file an amended complaint so as to state a cause of action.